IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE



-------------------------------------------------------x
                                    )
In re:                              )    Chapter 11
                                    )
QIMONDA RICHMOND, LLC et. al.       )    Case No. 09-10589 (MFW)
                                    )
            Debtors.                )    Jointly Administered
                                    )
-------------------------------------------------------x    **Re: Docket No. 680**

### ORDER (I) AUTHORIZING THE SALE BY QIMONDA RICHMOND, LLC TO TEXAS INSTRUMENTS INCORPORATED OF CERTAIN ASSETS FREE AND CLEAR OF ENCUMBRANCES, (II) APPROVING ASSET PURCHASE AGREEMENT, AND (III) AUTHORIZING THE DEBTOR TO PURCHASE CERTAIN ADDITIONAL ASSETS

Upon the motion [Docket No. 680], dated September 3, 2009 (the "Motion"), of

Qimonda Richmond LLC, as debtor and debtor-in-possession (the "Seller" or "Debtor") in the

above captioned bankruptcy case (the "Bankruptcy Case"), for the entry of an order (i)

authorizing the Debtor's sale (the "Sale") to Texas Instruments Incorporated ("Purchaser"),

pursuant to an Asset Purchase Agreement between the Debtor and Purchaser, dated as of August

20, 2009 (as amended and as may be subsequently amended, the "Purchase Agreement"), a copy

of which is annexed hereto as Exhibit A, of the Assets,[1] free and clear of Encumbrances, with

such Encumbrances to transfer, affix, and attach to the proceeds of the Sale, with the same order,

priority, validity, force, and effect which such Encumbrances now have against the Assets (with

certain of such Encumbrances satisfied at Closing as set forth herein), subject to any claims and

defenses the Debtor or its estate may possess with respect thereto, (ii) approving the Purchase

Agreement and the transactions set forth therein, and (iii) authorizing the Debtor to purchase

certain assets from (A) RBS Asset Finance, Inc. ("RBS"), pursuant to the Asset Purchase

Agreement to which the Debtor and RBS are parties, dated as of August 20, 2009 (the "RBS

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.

Purchase Agreement"), and (B) Overland Capital Group, Inc. ("Overland"), pursuant to the Asset Purchase Agreement to which the Debtor and Overland are parties, dated as of August 20, 2009 (the "Overland Purchase Agreement" and together with the RBS Purchase Agreement, the "Related Purchase Agreements"), all as more fully described in the Motion, the Purchase Agreement, and the Related Purchase Agreements; and upon this Court's order dated July 21, 2009, approving, *inter alia,* certain bidding procedures and an auction (the "Auction") in connection with the Debtors' sales of assets; and upon the *Order (I) Authorizing Qimonda Richmond, LLC to Award Bidding Protections to Texas Instruments Incorporated, and (II) Affording the Payment of the Bidding Protections Administrative Expense Treatment under Sections 503 and 507 of the Bankruptcy Code,* dated September 14, 2009 [Docket No. 727] (the "Stalking Horse Order"); and upon the *Notice of Filing of Allocation Schedule Pursuant to Order (I) Authorizing Qimonda Richmond, LLC to Award Bidding Protections to Texas Instruments Incorporated and (II) Affording the Payment of the Bidding Protections Administrative Expense Treatment,* dated September 15, 2009 [Docket No. 741] (the exhibit annexed thereto, the "Allocation Schedule"); and upon the *Notice of Filing of Amended Form of Sale Order,* dated September 17, 2009 [Docket No. 753]; and even though the Debtors extended the bid deadline, as a result of not receiving any competing bids on any of the Assets, no Auction being required; and Purchaser having presented the highest and best bid for the Assets; and upon the record of the hearing to consider approval of the proposed Sale (the "Sale Hearing"); and the Court having determined that the relief requested by the Motion is proper, lawful, necessary, appropriate and in the best interests of the Debtor, its estate, creditors and direct and indirect equity holders, and all parties-in-interest; and upon the Declaration of James Robert Simpson (the "Simpson Declaration"); and any responses and objections to the Motion, including the objection of the City of Richmond, which was resolved, and the informal objection of Kingston Technology

International, LTD. ("Kingston"), which was resolved in principle prior to the extended objection deadline set for such entity and such resolution is set forth in decretal paragraph 29(vi) of this Order, or reservations of rights having been withdrawn, resolved, or overruled by this Order; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

THE COURT FINDS AND DETERMINES THAT:[2]

*General Findings and Notice*

A.      On February 20, 2009 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), thereby initiating the Bankruptcy Case and creating its bankruptcy estate (the "Estate").

B.      The Debtor is a limited liability company duly organized, and in good standing, under the laws of the State of Delaware.

C.      No trustee has been appointed in the Bankruptcy Case, and the Debtor continues to manage the Estate as a debtor-in-possession.

D.      As evidenced by the certificate(s) of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing: (i) service of the Motion was proper, adequate and sufficient under the applicable Federal Rules of Bankruptcy Procedure and the Local Rules of this Court, (ii) proper, timely, adequate and sufficient notice of the Motion, the Auction and the Sale Hearing has been provided and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded by written and publication notice to all interested persons and entities, including: (1) the Office of the

---

[2]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Bankruptcy Rule 7052, as made applicable by Bankruptcy Rule 9014.

United States Trustee; (2) the Purchaser; (3) the official committee of unsecured creditors appointed in the Bankruptcy Case (the "Committee"); (4) counsel to the agent for the postpetition lender; (5) all entities known to have asserted any Encumbrances in, upon or against the Assets; (6) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion or with jurisdiction over the Debtor's business and Assets or any part thereof; (7) other potentially interested purchasers; (8) Qimonda AG, (9) Qimonda Holding BV; and (10) all parties listed on the Debtors' creditor matrix; (iii) such notice was good, sufficient and appropriate under the particular circumstances, and (iv) no other or further notice of the Motion, Auction or the Sale Hearing is required.

E.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of this case and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## Corporate Power, Authority and Ownership of the Assets

F.      Subject to entry of this Order, (i) the Debtor has the full authority, ability, standing and right, under the Bankruptcy Code and applicable nonbankruptcy law, to enter into and perform under and consummate the Purchase Agreement, the Related Purchase Agreements and all other documents contemplated thereby, and to sell, assign, transfer, convey and deliver the Assets (after closing the Related Purchase Agreements) to the Purchaser pursuant to the Purchase Agreement and this Order, (ii) the Sale of the Assets by the Debtor pursuant to the Purchase Agreement has been validly and duly authorized by all necessary corporate action of the Debtor, (iii) the purchase of the assets in the Related Purchase Agreements by the Debtor has been validly and duly authorized by all necessary corporate action of the Debtor, (iv) the Debtor has all of the power and authority necessary to consummate the transactions contemplated by the

Purchase Agreement and the Related Purchase Agreements, and (v) the Debtor has taken all action necessary to authorize and approve the Purchase Agreement the Related Purchase Agreements and the consummation by the Debtor of the transactions contemplated thereby.

G. The Debtor is the sole and lawful owner of, and holds good and marketable title to, the Assets (other than the Assets to be purchased by the Debtor in the Related Purchase Agreements, which will be acquired by the Debtor at the closing of the Related Purchase Agreements and at which time, the Debtor will be the sole and lawful owner of, and hold good and marketable title to, such Assets). The transfer of the Assets to the Purchaser pursuant to this Order will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser, to the exclusion of all other parties, with all right, title, and interest of the Debtor in and to the Assets free and clear of all Encumbrances.

*The Sale Process*

H. As evidenced by the record of the Bankruptcy Case and at the Sale Hearing, and on the papers filed in connection therewith, (i) the Debtor has marketed the Assets and conducted the sale process in compliance with applicable law and orders of this Court, (ii) the Auction was duly noticed but was not required, and (iii) a reasonable opportunity was provided to any interested party to make a higher or better offer for the Assets.

I. The Purchase Agreement resulted from the Debtor's marketing of the Assets, undertaken in full compliance with the Stalking Horse Order and applicable law. The highest and best offer that resulted from these activities was the offer from Purchaser, as embodied in the Purchase Agreement, pursuant to which Purchaser will pay the Debtor the Purchase Price for the Assets, subject to all rights, remedies, obligations and other provisions in the Purchase Agreement, including, without limitation, the Adjustment Mechanism (as defined in the Purchase Agreement).

J.     Based on the facts and circumstances of the Debtor, additional marketing activities are unlikely to lead to any higher or better offer and would be costly and burdensome, and result in additional delays and costs. Any benefit to be gained by additional marketing of the Assets is likely to be outweighed by the costs and burdens associated therewith.

## The Purchase Agreement

K.     Purchaser's offer, as set forth in the Purchase Agreement, provides for the sale and transfer of the Assets to Purchaser. Such offer is the highest and best offer received for the assignment, transfer, conveyance, delivery and Sale of the Assets. Purchaser complied in all respects with the Stalking Horse Order and any other applicable order of this Court in negotiating and entering into the Purchase Agreement and the Sale, and the Purchase Agreement likewise complies with the Stalking Horse Order and any other applicable order of this Court.

L.     The Purchase Price to be paid by Purchaser under the Purchase Agreement is fair value, and constitutes reasonably equivalent and reasonable market value and fair consideration for the Assets under the circumstances.

M.     Purchaser is a bona fide third party purchaser for value of the Assets and is not an insider (as defined in the Bankruptcy Code) of the Debtor or Qimonda North America Corp. ("QNA" and together with the Debtor, the "Debtors"). As set forth in the Simpson Declaration, Purchaser seeks to consummate the purchase of the Assets in good faith and for no improper motive, reason or purpose.

N.     The Purchase Agreement was negotiated, proposed and entered into in good faith, from arm's length bargaining positions, and without collusion. Therefore, Purchaser, as a good faith purchaser, is entitled to the full protections of section 363(m) of the Bankruptcy Code with respect to the Assets and the transactions contemplated by the Purchase Agreement. Neither the Debtor, the Purchaser nor any of the entities that have consented to the sale pursuant to section

363(f) of the Bankruptcy Code has engaged in any conduct that would cause or permit the Purchase Agreement or the transfer of the Assets to be void or voidable under section 363(n) of the Bankruptcy Code.

O.      The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, the Estate, and its creditors and direct and indirect equity holders, if the Sale of the Assets to the Purchaser was not free and clear of all Encumbrances of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of such Encumbrances, including, without limitation, the Excluded Liabilities (as defined in the Purchase Agreement).

P.      Sound business reasons exist for the Sale of the Assets pursuant to the Purchase Agreement. Entry into the Purchase Agreement and consummation of the transactions contemplated thereby constitute the exercise by the Debtor of sound business judgment and such acts are in the best interests of the Debtor, the Estate, its creditors and direct and indirect equity holders, and all parties-in-interest. The Court finds that the Debtor has articulated reasonable and compelling circumstances and good and sufficient business reasons justifying the Sale of the Assets pursuant to the Purchase Agreement in accordance with sections 105 and 363 of the Bankruptcy Code. Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk of deterioration of the value of the Assets if the transactions contemplated in the Purchase Agreement and the Related Purchase Agreements are not consummated quickly; (ii) the Sale of the Assets pursuant to the Purchase Agreement will reduce or minimize continuing, significant costs and expenses being incurred by the Debtor by having to, among other things, maintain, insure and provide security for the Assets; (iii) the Purchase Agreement constitutes the highest and best offer for the Assets; and (iv) the consummation of the Purchase Agreement will present the best opportunity to realize the value of the Assets and avoid decline and devaluation

of the Assets. In addition, the Sale of the Assets pursuant to the Purchase Agreement and the purchase of the assets pursuant to the Related Purchase Agreements will (i) enable the Debtor to take advantage of a favorable offer in a market that may decline; (ii) prevent the continuing accrual of postpetition costs and expenses and obligations on account of the Assets; (iii) prevent the continuing accrual of interest to the DIP Lenders;3 and (iv) enable the Debtor to sell the Assets for fair market value.

  Q.  The value of the Assets is maximized by (i) a Sale in one lot, as opposed to piecemeal sales, and (ii) the purchase of the assets by the Debtor in the Related Purchase Agreements.

  R.  The consideration provided by the Purchaser for the Assets is the highest and otherwise best offer received by the Debtor and is fair and reasonable. A sale of the Assets other than one free and clear of Encumbrances would impact materially and adversely on the Estate, and would yield substantially less value for the Estate, with less certainty than provided by the Sale of the Assets to the Purchaser. Consequently, a sale of the Assets other than one free and clear of Encumbrances would be of substantially less benefit to the Estate. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtor and the indirect benefits of such sale. Therefore, the Sale of the Assets contemplated by the Purchase Agreement is in the best interests of the Debtor, the Estate, its creditors and direct and indirect equity holders, and all parties-in-interest.

  S.  Time is of the essence to closing the Sale, and the Purchase Agreement contains strict time deadlines for the consummation of the transaction contemplated therein.

---

3  The term "DIP Lenders" shall have the meaning ascribed to it in that certain Amended and Restated Senior Secured Superpriority Debtor In Possession Loan and Security Agreement, as amended and restated as of May 5, 2009, among the Debtors, 1903 Onshore Funding, LLC, the lending institutions party thereto from time to time and GB Merchant Partners, LLC as Agent (the "DIP Loan Agreement").

T.     The Debtor may sell the Assets free and clear of all Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who are either (i) identified in decretal paragraph 29 (based on the conditions set forth therein), (ii) did not object, or (iii) withdrew their objections to the Sale or to the Motion are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code.

U.     All other holders of Encumbrances fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the cash proceeds of the Sale of the Assets ultimately attributable to the property against or in which they assert such Encumbrance with the same order, priority, validity, force, and effect which they now have against the Assets, subject to any claims and defenses the Debtor or its Estate may possess with respect thereto.

V.     Approval of the Purchase Agreement and the Related Purchase Agreements and consummation of the Sale of the Assets in the Purchase Agreement and the purchase of assets in the Related Asset Agreements at this time are in the best interests of the Debtor, the Estate, its creditors and direct and indirect equity holders, and all parties-in-interest.

W.     Neither Purchaser, GECC, Overland, RBS, Henrico County, Kingston nor the DIP Lenders is obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transaction contemplated by the Purchase Agreement based upon any arrangement made by or on behalf of the Seller, provided that nothing herein shall relieve the Seller of its obligations to make payments, pursuant to applicable orders of this Court, to professionals retained in these cases.

NOW, THEREFORE, AFTER DUE DELIBERATION, THE COURT ORDERS, ADJUDGES, AND DECREES THAT

*General Provisions and Authority*

1.      The Motion is granted in all respects. All responses or objections to the Motion or reservations of rights to the relief requested therein that have not been withdrawn, waived or settled are overruled on the merits and denied in their entirety.

2.      The Purchase Agreement and all of the transactions contemplated thereby are approved and shall be binding on the Debtor, the Estate and all creditors, direct and indirect equity holders and parties in interest in the Bankruptcy Case.

3.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized to enter into, perform under, comply with, implement and to take all other action as is necessary to consummate the terms of the Purchase Agreement and the Related Purchase Agreements including, but not limited to, purchasing the Assets subject to the RBS Purchase Agreement and the Overland Purchase Agreement and executing and delivering all additional agreements, instruments, and documents required under the Purchase Agreement and the Related Purchase Agreements and such other agreements that are necessary or appropriate to consummate the transactions contemplated by the Purchase Agreement or the Related Purchase Agreements, all without the need for further motion or Court order.

4.      Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon Closing, good and marketable title in and to the Assets shall be transferred to the Purchaser free and clear of all Encumbrances of any kind or nature whatsoever, including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or the Purchaser's interest in the Assets, or

any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to ownership or operation of the Assets prior to the Closing, and (iii) (a) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, (b) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or any of the Debtor's predecessors or affiliates, and (c) claims (as defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the Petition Date, including, without limitation, any product liability, guarantee, assurance, or warranty (whether expressed or implied) or that arise by operation of law, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to all claims arising under doctrines of successor liability, with all such Encumbrances of any kind or nature whatsoever to attach to the net proceeds of the Sale of the Assets with the same order, priority, validity, force, and effect which they now have against the Assets, subject to any claims and defenses the Debtor or its Estate may possess with respect thereto, subject to decretal paragraph 29 below.

5. The transfer of the Assets to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Assets, shall vest the Purchaser with the Debtor's right, title, and interest in and to the Assets as the sole and exclusive owner thereof free and clear of all Encumbrances of any kind or nature whatsoever, and shall vest the Purchaser with good and marketable title in and to the Assets.

6. The aggregate consideration, including cash and non-cash consideration, provided by the Purchaser for the Assets under the Purchase Agreement shall be deemed to constitute reasonably equivalent and reasonable market value and fair consideration for the Assets under the Bankruptcy Code and shall not be subject to challenge under any applicable nonbankruptcy law.

7. Each and every federal, state, and local governmental agency, department or authority is directed to accept, file and record any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

## Good Faith Protections

8. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Assets pursuant to the Purchase Agreement shall not affect the validity of the Sale of the Assets to the Purchaser, unless such consummation is stayed pending appeal. The Purchaser is a good faith purchaser of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

9. The consideration provided by the Purchaser for the Assets under the Purchase Agreement is the product of non-collusive, arm's length negotiations, and is fair and reasonable and may not be avoided under the provisions of section 363(n) of the Bankruptcy Code.

## Sale of the Assets Free and Clear of Encumbrances

10. Those parties asserting Encumbrances against, in or to the Assets who did not respond or object to the Sale of the Assets, or who have withdrawn or resolved their responses or objections, are deemed to have consented to the Purchase Agreement and the transactions contemplated thereby and authorized herein pursuant to section 363(f)(2) of the Bankruptcy

Code. Those parties asserting Encumbrances against, in or to the Assets who did respond or object and have not withdrawn such responses or objections fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

11. Subject to decretal paragraph 29 below, any holder or potential holder of an Encumbrance against, in or to the Assets is provided adequate protection, within the meaning of section 363(e) of the Bankruptcy Code, by the terms of this Order, including, but not limited to, the provisions herein that provide for Encumbrances, if any, to attach to the proceeds of the Assets ultimately attributable to the property against or in which they assert such Encumbrances.

12. Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, employees, trade, and other creditors, including, but not limited to Qimonda AG, Qimonda Holding BV and the other Seller's Parent Entities that may hold an Encumbrance of any kind or nature whatsoever against, in or to the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the operation of the Assets prior to the Closing, or the transfer of the Assets to the Purchaser under the terms of the Purchase Agreement, are forever barred, estopped, and permanently enjoined from asserting any Encumbrance against the Purchaser, its successors and assigns, its property, or the Assets or proceeds thereof (or the recipients of such proceeds).

13. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing an Encumbrance in the Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or other releases of

all Encumbrances which the person or entity has with respect to the Assets, then (i) the Debtor is authorized to execute at Closing, and within two (2) business days thereafter, file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets, and (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in the Assets of any kind or nature whatsoever.

14.     On the Closing of the Sale of the Assets pursuant to the Purchase Agreement, all parties are authorized to execute such documents and take all actions as may be necessary to release their Encumbrances in the Assets, if any, as such Encumbrances may have been recorded or may otherwise exist. All persons and entities that are in possession of any of the Assets are directed to surrender possession of such Assets to Purchaser at the Closing.

15.     This Order (i) shall be effective as a determination that, as of the Closing, all Encumbrances of any kind or nature whatsoever existing as to the Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

16.     At the Closing, pursuant to and in accordance with the Purchase Agreement and the Related Purchase Agreements, Seller is authorized to quitclaim any and all of its right, title and interest in, to and under the assets in the Overland Purchase Agreement.

*No Successor Liability*

17.     Consummation of the Purchase Agreement and the transactions contemplated thereby and therein do not effect a de facto merger or consolidation of the Debtor with Purchaser.  Purchaser is not the alter ego of, a successor-in-interest to, or a continuation or substantial continuation of the Debtor or the enterprise(s) of the Debtor.  Purchaser shall not be liable for any acts or omissions of the Debtor in the conduct of its business or arising under or related to the Assets other than as set forth in the Purchase Agreement.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, to the extent allowed by law, the Purchaser shall not be liable for any bankruptcy claims, other claims, written notices, causes of action, proceedings, complaints, investigations or other proceedings against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any such liability that may be imposed by statute (e.g., under so-called "bulk-sale" laws) or any theory of antitrust, environmental, products liability, successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the ownership or operation of the Assets prior to the Closing.

18.     Except to the extent Purchaser otherwise specifically agreed in the Purchase Agreement or this Order, Purchaser shall have no liability, responsibility or obligation for any claims, liabilities or other obligations of the Debtor or its Estate, including without limitation, any claims, liabilities or other obligations related to the Assets prior to Closing. Under no circumstances shall the Purchaser be deemed a successor of or to the Debtor for any Encumbrance against, in or to the Debtor or the Assets.

19.     The Sale of the Assets shall not be subject to any Encumbrances, and Encumbrances of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor. All persons holding Encumbrances against the Assets of any kind or nature whatsoever (including but not limited to, the Debtor and/or its respective successors, including any trustee, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state and local officials, maintaining any authority relating to any environmental, health and safety laws, and their respective successors or assigns) shall be, and are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Encumbrances of any kind or nature whatsoever against the Purchaser, its property, its successors and assigns, or the Assets, as an alleged successor or otherwise, with respect to any Encumbrance of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtor, the Estate, officers, directors, shareholders, or the Assets. Following the Closing, no holder of an Encumbrance in the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Encumbrance, or any actions that the Debtor may take in the Bankruptcy Case.

20.     This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all parties-in-interest in the Estate and the Bankruptcy Case, all successors and assigns of the Purchaser, the Debtor and their affiliates, subsidiaries and parents, the Assets, and any trustee appointed or elected in the Bankruptcy Case or upon a conversion to chapter 7 of the Bankruptcy Code and shall not be subject to rejection pursuant to section 365 of the Bankruptcy Code. Nothing contained in any chapter 11 plan confirmed in the Bankruptcy Case or the order confirming any such chapter 11 plan shall conflict with, impair, negate or be contrary to or inconsistent with the provisions of the Purchase Agreement or this Order.

21.     This Court retains jurisdiction to enforce and implement the terms and provisions of the Purchase Agreement, the Related Purchase Agreements, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein, (ii) interpret, implement, and enforce the provisions of this Order, (iii) protect the Purchaser against (a) any of the Debtor's liabilities including specifically the Excluded Liabilities or (b) any Encumbrances against, in or to the Assets, of any kind or nature whatsoever, which attach to the proceeds of the Sale of the Assets; *provided, however,* that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Purchase Agreement or this Order, such abstention, refusal to exercise, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

22. The terms and provisions of the Purchase Agreement, the Related Purchase Agreements and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Estate, its creditors and direct and indirect equity holders, and all parties-in-interest, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an Encumbrance in the Assets to be sold to the Purchaser pursuant to the Purchase Agreement. Notwithstanding any subsequent appointment or election of any trustee(s), responsible officer, or other fiduciary or representative under any section of any chapter of the Bankruptcy Code, such trustee(s), responsible officer, or other fiduciary or representative shall be bound by the terms and provisions of the Purchase Agreement, the Related Purchase Agreements and this Order.

23. The provisions of this Order and the terms and conditions of the Purchase Agreement and the Related Purchase Agreements shall be binding upon, fully enforceable against and inure to the benefit of any trustee, responsible officer or other fiduciary appointed under any section of the Bankruptcy Code or any applicable law. Such binding effect is an integral part of the Sale and this Order.

*Miscellaneous*

24. The failure specifically to include any particular provisions of the Purchase Agreement or the Related Purchase Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement and the Related Purchase Agreements be authorized and approved in their entirety. Notwithstanding the foregoing, to the extent of any inconsistency between this Order, the Purchase Agreement or either Related Purchase Agreement, the terms of this Order shall govern.

25. The Purchase Agreement, the Related Purchase Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the

parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Estate.

26.     The provisions of this Order are nonseverable and mutually dependent.

27.     Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transaction contemplated by the Purchase Agreement based upon any arrangement made by or on behalf of the Seller, provided that nothing herein shall relieve the Seller of its obligations to make payments, pursuant to applicable orders of this Court, to professionals retained in these cases.

28.     The Debtor is not authorized hereby to sell, transfer, or deliver in any form any products or software licensed by Oracle USA, Inc. and/or its affiliates ("Oracle"), embedded in or loaded on any computer hardware, tools, equipment or any other electronic device or stored by any other means, without the prior written consent of Oracle.

*Required Payments Pursuant to the Stalking Horse Order*

29.     On the Closing Date, Seller is permitted to and shall make the following payments from the proceeds of the Sale (without any reduction for commissions, costs, fees, expenses, the Break-Up Fee, the Reimbursement Amount or otherwise) to:

   (i)     GECC, of an amount equal to $25 million for the GECC Boot Collateral (as defined in the Stalking Horse Order) included in the Assets;

   (ii)    the DIP Lenders, of an amount sufficient to discharge the outstanding Obligations (as defined in the DIP Loan Agreement);

   (iii)   Overland, of an amount equal to $3,460,375 for the Assets on which Overland has a security interest;

(iv)     RBS, of an amount equal to $1,321,234 for the Assets on which RBS has a security interest;

(v)      Henrico County, of an amount equal to $2,975,467 plus 4% statutory interest to the date of closing, to satisfy and fully discharge Henrico County's personal property tax claims against the Debtor, less any personal property tax payments made through the date of closing; provided that upon the payment to Henrico County as set forth herein, the liens, claims, encumbrances and other interests that Henrico County has in the Henrico Account[4] shall be released to the Debtor; and

(vi)     a segregated, interest bearing account[5] (the "Kingston Segregated Account"), of an amount equal to the Kingston Amount; provided that all rights, claims and defenses of Kingston and the Debtors are reserved with respect to the validity, priority and enforceability of the claims and liens asserted by Kingston against the Debtors, including without limitation in the adversary proceeding, entitled Qimonda Richmond, LLC v. Kingston Technology International, Ltd., Adv. Pro. 09-52137-MFW (the "Kingston Avoidance Action"). Kingston, the Debtors and the Committee reserve all of their rights, remedies, causes of action, and defenses (if any) relating to: (a) any other claims that have been or may be asserted by and between either of the Debtors on the one hand and Kingston on the other hand solely as between such parties; and (b) any other assets of the Debtors that are not being conveyed in the Sale, including other assets of the Debtors in which Kingston asserts a lien and security interest. Notwithstanding the foregoing, no such reservation of rights or claims shall affect the Purchaser's rights under the Purchase Agreement, the Related Purchase Agreements or this Order. The term "Kingston Amount" shall mean an amount equal to $31,717,674 (plus any interest accruing thereon) for the Assets on which Kingston asserts it has a lien and security interest (the "Kingston Purported Assets"). The Kingston Amount shall be released (a) to Kingston, (1) if Kingston prevails in the Kingston Avoidance Action by a final order of a court of competent jurisdiction (including any applicable court of appeal) that is not subject to any pending appeal and for which either the time for filing a notice of appeal has expired or all available rights of appeal have been exhausted (a "Kingston Final Order") such that none of the liens and security interests asserted by Kingston that are contested in the Kingston Avoidance Action are avoided, or (2) if the Kingston Avoidance Action is dismissed without prejudice and no avoidance action or objection to the purported Kingston liens, security interests or claims is filed by the Debtor, the Committee, or a successor thereof within 120 days of such dismissal (such avoidance action or objection shall be included in the definition of "Kingston Avoidance

---

4     As defined in the Order Establishing Procedures for the Sale or Abandonment of Miscellaneous Assets, dated March 20, 2009 (Docket No. 158).

5     The Debtor shall establish an interest bearing account after the Closing as soon as is practicable.

Action"); (b) to the Seller, if the liens and security interests asserted by Kingston that are the subject of the Kingston Avoidance Action are avoided in their entirety by a Kingston Final Order; (c) pursuant to the terms of a settlement agreement between Kingston and the Seller approved by the Court (if such approval is required); or (d) pursuant to a further order of this Court allocating the Kingston Amount between the parties if the liens and security interests asserted by Kingston on the Kingston Purported Assets are avoided in part by a Kingston Final Order.

30. GECC, the DIP Lenders, Overland, RBS and Henrico County have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

31. The interests asserted by Kingston in the Kingston Purported Assets are subject to a *bona fide* dispute, within the meaning of section 363(f)(4) of the Bankruptcy Code.

32. GECC waived any right to credit bid pursuant to section 363(k) of the Bankruptcy Code for the GECC Boot Collateral included in the Assets.

*No Stay Pursuant to FED. R. BANK. P. 6004(h)*

33. The stay of orders authorizing the (i) use, sale, or lease of property as provided for in FED. R. BANK. P. 6004(h) shall not apply to this Order, and this Order is immediately effective and enforceable.

**SO ORDERED.**

Dated: September 24, 2009
Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE