# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| QIMONDA RICHMOND, LLC, <u>et al.</u>,[1] | ) | Case No. 09-10589 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-----------------------------------------------------------------------x

### JOINT PLAN OF LIQUIDATION FOR DEBTORS AND DEBTORS IN POSSESSION, QIMONDA RICHMOND, LLC AND QIMONDA NORTH AMERICA CORP.

Mark Thompson (admitted *pro hac vice*)
Morris J. Massel (admitted *pro hac vice*)
Terry Sanders (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

-and-

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:(302) 651-7700
Facsimile: (302) 651-7701
E-mail:     collins@rlf.com
            merchant@rlf.com
            kaufman@rlf.com

Counsel for Debtors and Debtors In Possession
Co-Proponent of the Plan

Craig F. Simon (admitted *pro hac vice*)
Daniel P. Winikka (admitted *pro hac vice*)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone: (214) 969-4573
Facsimile:  (214) 969-5100

-and-

William P. Bowden (No. 2553)
Amanda M. Winfree (No. 4615)
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067
Email:   wbowden@ashby-geddes.com
         awinfree@ashby-geddes.com

Counsel for the Official Committee of Unsecured Creditors
Co-Proponent of the Plan

Dated:  June 7, 2011

---

[1]     The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Qimonda Richmond, LLC (7867) and Qimonda North America Corp. (4654).

**TABLE OF CONTENTS**

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ..................................................1

    A.    Rules of Interpretation ..................................................................................................1
    B.    Defined Terms ..............................................................................................................1

ARTICLE II. UNCLASSIFIED ADMINISTRATIVE AND PRIORITY CLAIMS ..........................9

    A.    DIP Claims ...................................................................................................................9
    B.    Administrative Expense Claims ...................................................................................9
    C.    Professional Fee Claims ...............................................................................................9
    D.    Priority Tax Claims ......................................................................................................9
    E.    Other Priority Claims .................................................................................................10
    F.    Bar Dates for Administrative Expense Claims ..........................................................10

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ....................11

    A.    Summary ....................................................................................................................11
    B.    Classification and Treatment of Claims and Equity Interests ...................................11
    C.    Non-Consensual Confirmation ..................................................................................12
    D.    Solicitation of the Debtors ........................................................................................13

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ..............................................13

    A.    Corporate Existence ...................................................................................................13
    B.    Appointment of a Liquidating Trustee and a Liquidating Trust Committee. ............13
    C.    The Qimonda Liquidating Trusts ...............................................................................13
    D.    Directors/Officers/Equity/Debts of the Debtors on the Effective Date. ...................16
    E.    Liquidation of the Debtors .........................................................................................17
    F.    Operations of the Debtors Between the Confirmation Date and the Effective Date ....................17
    G.    Term of Injunctions or Stays .....................................................................................17
    H.    Creditors' Committee .................................................................................................17
    I.    Termination of Professionals .....................................................................................17
    J.    Post-Confirmation Reporting .....................................................................................18

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ....................................................18

    A.    Distributions on the Effective Date and Initial Distribution Date .............................18
    B.    Disputed Reserves ......................................................................................................18
    C.    Subsequent Distributions ...........................................................................................19
    D.    Record Date for Distributions ....................................................................................19
    E.    Delivery of Distributions ...........................................................................................19
    F.    Surrender of Cancelled Instruments and Securities ...................................................20
    G.    Lost, Stolen, Mutilated or Destroyed Instrument or Security ...................................20
    H.    Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement .......21
    I.    Time Bar to Cash Payments by Check ......................................................................21
    J.    Limitations on Funding of Disputed Reserves ..........................................................21
    K.    Withholding and Reporting Requirements .................................................................21
    L.    No Payments of Fractional Dollars ...........................................................................21
    M.    Interest on Claims ......................................................................................................22
    N.    Setoff and Recoupment .............................................................................................22

O.     Insurance Preservation and Proceeds ...................................................................22
P.     Application of Distributions ................................................................................22

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED
     CLAIMS OR EQUITY INTERESTS .........................................................................22

A.     No Distribution Pending Allowance ...................................................................22
B.     Resolution of Disputed Claims ..........................................................................22
C.     Objection Deadline .............................................................................................22
D.     Estimation of Claims ..........................................................................................23
E.     Disallowance of Claims ......................................................................................23

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........................23

A.     Rejection of Executory Contracts and Unexpired Leases ..................................23
B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases .........23

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .................................................24

A.     Conditions Precedent to the Effective Date .......................................................24

ARTICLE IX. RELEASE, EXCULPATION, INJUNCTION AND RELATED PROVISIONS .............................24

A.     ~~Releases~~ ........................................................................................................24
A.     Release by Debtor Exculpated Parties of DIP Released Parties ........................24
B.     Exculpation .........................................................................................................25
C.     Preservation of Causes of Action .......................................................................26
D.     Releases of Liens ................................................................................................27
E.     Injunction ...........................................................................................................27
F.     Termination of All Employee and Workers' Compensation Benefits .................29
G.     Exclusions and Limitations on ~~Releases and~~ Exculpation .................................29

ARTICLE X. RETENTION OF JURISDICTION ..................................................................................30

ARTICLE XI. MISCELLANEOUS PROVISIONS .................................................................................31

A.     Modification of Plan ...........................................................................................31
B.     Revocation of Plan .............................................................................................31
C.     Successors and Assigns ......................................................................................32
D.     Governing Law ...................................................................................................32
E.     Reservation of Rights .........................................................................................32
F.     Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes ...........32
G.     Section 1125(e) Good Faith Compliance ...........................................................32
H.     Further Assurances .............................................................................................32
I.     Service of Documents .........................................................................................32
J.     Filing of Additional Documents .........................................................................33

RLF1 4453588v. ~~14065835v~~

## JOINT PLAN OF LIQUIDATION OF DEBTORS AND DEBTORS IN POSSESSION, QIMONDA RICHMOND, LLC AND QIMONDA NORTH AMERICA CORP.

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, the debtors and debtors in possession in the above-captioned cases and the official committee of unsecured creditors of such debtors and debtors in possession jointly propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code for Qimonda Richmond, LLC and Qimonda North America Corp.

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

### A. Rules of Interpretation

1. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2. The provisions of Fed. R. Bankr. P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3. All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### B. Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1. "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation: (a) success and completion fees allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and (b) fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under Sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with (x) applications filed pursuant to Section 330 and 331 of the Bankruptcy Code and (y) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Retained Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Retained Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

RLFI 4453588v. 14065835v

2. "*Administrative Expense Claims Bar Date*" means the date that will be set by the Bankruptcy Court as the deadline for holders of Administrative Expense Claims (other than Postpetition Intercompany Claims) to file a request with the Bankruptcy Court for payment of such Administrative Expense Claim.

3. "*Administrative Expense Claims*" means Claims that have been timely filed, pursuant to the deadline and procedure set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Accrued Professional Compensation; (c) Section 503(b)(9) Administrative Expense Claims; (d) all US Trustee Fees; and (e) Postpetition Intercompany Claims.

4. "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

5. "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtors in their schedules of liabilities as other than disputed, contingent or unliquidated and as to which Debtors or other party-in-interest has not filed an objection by the Claims Objection Deadline; (b) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (c) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (ii) in any stipulation with Debtors of amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (iii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (e) a Disputed Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Deadline.

6. "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies against Persons that were or may be brought by or on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions, settlements or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

7. "*Avoidance Recoveries*" means any and all recoveries from Avoidance Actions.

8. "*Bankruptcy Code*" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

9. "*Bankruptcy Court*" means the United States District Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States Bankruptcy Court for the District of Delaware.

10. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

11. "*Bar Date Order*" means the order entered by the Bankruptcy Court on June 26, 2009 entitled "Order Granting Motion Of The Debtors For Entry Of An Order: (A) Setting Bar Dates For Filing Proofs Of Claim; (B) Approving The Form And Manner For Filing Proofs Of Claim; And (C) Approving Notice Thereof" [Docket No. 495].

12. "*Beneficiaries*" means holders of Allowed Intercompany Claims and Allowed General Unsecured Claims, including, once Allowed, Disputed Claims that become Allowed Claims, subject to any right a holder of a Disputed Claim may have in the applicable Disputed Reserve as set forth in the Plan.

13. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Fed. R. Bankr. P. 9006(a)).

14. "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

15. "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including, but not limited to, Avoidance Actions, and all such matters set forth in Article IX.C of the Plan) of any of the Debtors, the Debtors In Possession, and/or the Estates that are pending or may be asserted against any Person or Entity on or after the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

16. "*Chapter 11 Cases*" means cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date, jointly administered under case number 09-10589 (MFW).

17. "*Claim*" means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against a Debtor.

18. "*Claims Objection Deadline*" means 180 days after the Effective Date; *provided*, *however*, that the Liquidating Trustee on behalf of the Qimonda Liquidating Trusts may file one or more motions with the Bankruptcy Court seeking additional extensions of this date.

19. "*Class*" means a category of holders of Claims or Equity Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

20. "*Committee Exculpated Parties*" means, collectively, and subject to Article IX.B and Article IX.G, the Creditors' Committee, and each of the members of the Creditors' Committee and each of their respective financial advisors, attorneys, accountants, consultants, other professionals and agents (including the officers, directors and employees of such Committee Exculpated Parties) who served in such capacities during the Chapter 11 Cases and in their capacity as such.

21. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22. "*Creditors' Committee*" means the official committee of unsecured creditors for the Chapter 11 Cases appointed by the United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, as the same may be amended from time to time.

23.  "*Debtor Exculpated Parties*" means, collectively, and subject to Article IX.B and Article IX.G, the Debtors and each of their respective financial advisors, attorneys, accountants, consultants, claims agents, sales agents other professionals and agents (including the officers, directors and employees of such Debtor Exculpated Parties other than such officers, directors and employees set forth in the Plan Supplement or party to an Avoidance Action) who served in such capacities during the Chapter 11 Cases and in their capacity as such.

24.  "*Debtors*" or "*Debtors In Possession*" means, collectively, Qimonda Richmond, LLC and Qimonda North America Corp.

25.  "*DIP Agent*" means GB Merchant Partners, LLC, in its capacity as agent.

26.  "*DIP Claims*" means claims arising pursuant to the DIP Termination Agreement or payable under the DIP Facility, including without limitation any DIP Contingent Liabilities.

27.  "*DIP Contingent Liabilities*" means any contingent indemnification obligations, including unreimbursed indemnification obligations, that may arise under the DIP Facility.

28.  "*DIP Facility*" means that certain Amended and Restated Senior Secured Superpriority Debtor in Possession Loan and Security Agreement dated as of March 26, 2009 and amended and restated as of May 5, 2009 (as amended from time to time).

29.  "*DIP Lenders*" means Regions Bank, Wells Fargo Foothill, LLC, Stairway Capital Management II LP, 1903 Offshore Loans SPV Limited and 1903 Onshore Funding, LLC, each in their capacity as lenders under the DIP Facility.

30.  "*DIP Released Parties*" means, collectively, the DIP Agent, the DIP Lenders and their respective officers, directors, employees, advisors, attorneys, professionals, accountants, financial advisors, consultants, agents and other representatives who served in such capacities during the Chapter 11 Cases and in their capacity as such.

31.  "*DIP Termination Agreement*" means that certain Termination Agreement between the Debtors, the DIP Agent and the DIP Lenders, dated as of December 8, 2009.

32.  "*Disclosure Statement*" means the *Disclosure Statement with Respect to Joint Plan of Liquidation of the Debtors and Debtors in Possession, Qimonda Richmond, LLC And Qimonda North America Corp.*, dated [_____], 2011 [Docket No. ___], prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law, and approved by the Bankruptcy Court in the Scheduling and Disclosure Statement Order, as it is amended, supplemented, or modified from time to time.

33.  "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which a Debtor or the Liquidating Trustee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by a Debtor or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

34.  "*Disputed Reserves*" means the reserve fund(s) created pursuant to Article V.B.1 of the Plan.

35.  "*Distribution Record Date*" means the date provided in the Confirmation Order as the record date for Distributions under the Plan.

36.  "*Distributions*" means the distributions made to holders of Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, the Qimonda Liquidating Trusts in accordance with the Plan, and from the Liquidating Trustee to the Beneficiaries, all in accordance with the Plan and the Liquidating Trust Agreement.

RLF1 4453588v. 14065835v

37. "*Effective Date*" means the date selected by the Debtors and the Creditors' Committee that is a Business Day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A have been (i) satisfied or (ii) waived pursuant to Article VIII.A. Upon selection of the Effective Date, the Debtors or the Liquidating Trustee, as the case may be, and the Creditors' Committee, shall file a notice with the Bankruptcy Court advising parties-in-interest of the Effective Date.

38. "*Employment Contracts*" means any and all employment contracts and amended employment contracts entered into between the Debtors and certain of their key executives, all of which are to be rejected by the Debtors pursuant to the Plan.

39. "*Entity*" means an "entity" (as that term is defined in section 101(15) of the Bankruptcy Code).

40. "*Equity Interest*" means any equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to any common equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests at any time.

41. "*Estate*" means the estate of a Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

42. "*Exculpated Parties*" means, collectively, the Debtor Exculpated Parties and the Committee Exculpated Parties.

43. "*Face Amount*" means, when used with reference to a Disputed Claim: (a) the full stated amount claimed by the holder of such Claim in any proof of Claim filed by the Bar Date or otherwise deemed timely filed under applicable law, if the proof of Claim specifies only a liquidated amount; or (b) if no proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law, or if the proof of Claim specified an unliquidated amount, the amount of the Claim (i) acknowledged by the applicable Debtor in any objection filed to such Claim or in the Schedules as an undisputed, noncontingent, and liquidated Claim, (ii) estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, (iii) proposed by the applicable Debtor (with the concurrence of the Creditors' Committee) prior to the Effective Date; or (iv) established by the Liquidating Trustee on behalf of the Qimonda Liquidating Trusts following the Effective Date; or (c) if neither (a) nor (b) above are applicable, an amount estimated by the applicable Debtor or the Liquidating Trustee, but such estimated amount will be no less than either (i) the amount of the claim estimated by the Bankruptcy Court or (ii) the liquidated portion of the amount claimed by the holder of such Claim in any proof of Claim filed by the Bar Date or otherwise deemed timely filed under applicable law.

44. "*Final DIP Order*" means the order entered by the Bankruptcy Court on May 7, 2009 entitled "Second Amended and Superseding Final Order Pursuant to Section 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to Obtain Postpetition Financing and (B) Modifying the Automatic Stay" [Docket No. 335].

45. "*Final Order*" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

RLF1 4453588v. 14065835v

46. "*General Unsecured Claim*" means Claims against any Debtor that are neither DIP Claims, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, Secured Claims, Secured Claims, Intercompany Claims nor Equity Interests.

47. "*Impaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

48. "*Initial Distribution*" means the Distribution to be made by the Liquidating Trustee on the Initial Distribution Date, in accordance with the Liquidating Trust Agreement, to holders of Allowed General Unsecured Claims after making adequate reserves for: (a) Disputed Claims; and (b) Liquidating Trust Expenses.

49. "*Initial Distribution Date*" means the date on which the Qimonda Liquidating Trusts shall make its initial Distribution, which shall be a date selected by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

50. "*Intercompany Claims*" means Claims held by one Debtor against the other Debtor arising on or before the Petition Date.

51. "*Liquidation Analysis*" means that certain chapter 7 liquidation analysis attached as Exhibit I to the Disclosure Statement.

52. "*Liquidating Trust Agreement*" means that certain agreement establishing and delineating the terms and conditions of the Qimonda Liquidating Trusts, which shall be filed as part of the Plan Supplement.

53. "*Liquidating Trust Assets*" means, collectively, the QNA Liquidating Trust Assets and the QR Liquidating Trust Assets.

54. "*Liquidating Trust Claims*" means, collectively, the QNA Liquidating Trust Claims and the QR Liquidating Trust Claims.

55. "*Liquidating Trust Committee*" means the ~~3-member~~ committee~~, which shall consist of up to 4 members,~~ created hereunder that shall oversee the Liquidating Trustee under the Liquidating Trust Agreement.

56. "*Liquidating Trust Expenses*" means, with respect to each of the QNA Liquidating Trust and the QR Liquidating Trust, and without limitation: (a) professional fees and costs incurred by the Qimonda Liquidating Trusts in connection with claims administration, reconciliation, or disputes of any asserted Liquidating Trust Claims; (b) all reasonable compensation of the Liquidating Trustee in the performance of its duties under the Liquidating Trust Agreement and Plan, including compensation, fees and costs of professionals, consultants, agents and employees retained or to be retained by the Liquidating Trustee for services rendered to the Liquidating Trustee in connection with the Liquidating Trust Assets, and the reasonable expenses of members of the Liquidating Trust Committee; and (c) all reasonable expenses relating to liquidating the Liquidating Trust Assets.

57. "*Liquidating Trustee*" means the person appointed by the Debtors and the Creditors' Committee in accordance with the Liquidating Trust Agreement to administer the Qimonda Liquidating Trusts.

58. "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

59. "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

60. "*Petition Date*" means February 20, 2009.

RLF1 4453588v. 14065835v

61. "*Plan*" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

62. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to the Plan, which shall be filed with the Bankruptcy Court not less than ten (10) days prior to the deadline for voting as set forth in the Scheduling and Disclosure Statement Order.

63. "*Postpetition Intercompany Claims*" means Claims held by one Debtor against the other Debtor arising after the Petition Date.

64. "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

65. "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code and Secured Claims (as defined herein) of governmental units based upon tax liability.

66. "*Professional Fee Claim*" means  Claim against one or more of the Debtors under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code or any professional or other Entity for services rendered or expenses incurred in these Chapter 11 Cases.

67. "*Pro Rata*" means, at any time, the proportion that the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or Classes, unless the Plan provides otherwise.

68. "*Qimonda Liquidating Trusts*" means, collectively, the QNA Liquidating Trust and the QR Liquidating Trust.

69. "*QNA Liquidating Trust*" means the Entity described in Article IV.C of the Plan that will take title to all of the QNA Liquidating Trust Assets, subject to the terms of Plan, as of the Effective Date.

70. "*QNA Liquidating Trust Assets*" mean Cash (and reserves of Cash, subject to the terms of such reserve, if any) of QNA, all QNA Liquidating Trust Claims, QNA's rights in any Disputed Reserves and any assets of QNA's Estate all of which will be transferred to and owned by the QNA Liquidating Trust pursuant to Article IV.C.1 of the Plan.

71. "*QNA Liquidating Trust Claims*" means any and all Causes of Action against any Person or Entity held or owned by QNA's Estate immediately prior to the Effective Date (whether asserted directly or derivatively); *provided*, *however*, that the QNA Liquidating Trust Claims exclude Causes of Action expressly released or exculpated pursuant to Article IX hereof.

72. "*QNA Unsecured Creditor Liquidating Trust Share*" means all proceeds of the QNA Liquidating Trust Assets, net of any Liquidating Trust Expenses (or any amounts held in reserve therefor) and after payment of Allowed Secured Claims, Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims (or the establishment of additional reserves for such Claims if such Claims are Disputed).

73. "*QR Liquidating Trust*" means the Entity described in Article IV.C of the Plan that will take title to all of the QR Liquidating Trust Assets, subject to the terms of Plan, as of the Effective Date.

74. "*QR Liquidating Trust Assets*" mean Cash (and reserves of Cash, subject to the terms of such reserve, if any) of QR, all QR Liquidating Trust Claims, QR's rights in any Disputed Reserves and any assets of QR's Estate all of which will be transferred to and owned by the QR Liquidating Trust pursuant to Article IV.C.1 of the Plan.

75. "*QR Liquidating Trust Claims*" means any and all Causes of Action against any Person or Entity held or owned by QR's Estate immediately prior to the Effective Date (whether asserted directly or derivatively); *provided*, *however*, that the QR Liquidating Trust Claims exclude Causes of Action expressly released or exculpated pursuant to Article IX hereof.

76. "*QR Unsecured Creditor Liquidating Trust Share*" means all proceeds of the QR Liquidating Trust Assets, net of any Liquidating Trust Expenses (or any amounts held in reserve therefor) and after payment of Allowed Secured Claims, Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims (or the establishment of additional reserves for such Claims if such Claims are Disputed).

77. "*Rejection Claim*" means any Claim against a Debtor arising from the rejection of any executory contract or unexpired lease, including any Claim of (a) a Lessor for damages resulting from the rejection of a lease of real property as such claim shall be calculated in accordance with section 502(b)(6) of the Bankruptcy Code, including any claims for indemnification or reimbursement asserted by a Person that is a co-debtor with a Debtor with respect to such obligations, and (b) an employee for damages resulting from the rejection of an Employment Contract as such Claim shall be calculated in accordance with section 502(b)(7) of the Bankruptcy Code.

78. "*Retained Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

79. "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed and amended by the Debtors pursuant to section 521 of the Bankruptcy Code.

80. "*Scheduling and Disclosure Statement Order*" means that certain order approving the Disclosure Statement, entered by the Bankruptcy Court on [_____], 2011 [Docket No. _____].

81. "*Section 503(b)(9) Administrative Expense Claims*" means Claims that have been timely filed pursuant to and in accordance with the Bar Date Order and that are granted administrative expense priority treatment pursuant to section 503(b)(9) of the Bankruptcy Code.

82. "*Secured Claims*" means Claims (or portions thereof) that are secured by a lien on property in which the Estates have an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; *provided, however,* that (a) claims of governmental units based upon tax liability are Priority Tax Claims (as defined herein) and are not Secured Claims; (b) the term Secured Claims shall not include DIP Claims; and (c) any such Secured Claim is not subject to avoidance under applicable bankruptcy or non-bankruptcy law.

83. "*Subsequent Distribution Date*" means the date(s) on which the Qimonda Liquidating Trusts shall make a Distribution, after the Initial Distribution Date, which subsequent date(s) shall be selected by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

84. "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

85. "*US Trustee Fees*" means all fees payable pursuant to section 1930 of title 28 of the United States Code.

# ARTICLE II.

## UNCLASSIFIED ADMINISTRATIVE AND PRIORITY CLAIMS

### A. DIP Claims

On the Effective Date, subject to the terms of the DIP Termination Agreement, (1) to the extent any obligations are outstanding and payable under the DIP Facility, including, without limitation, any DIP Contingent Liabilities that may have arisen prior to the Effective Date, all such outstanding and payable obligations shall (a) be allowed in an amount to be agreed upon by the Debtors and the holders of such Claims and (b) be paid in full in Cash or otherwise satisfied in a manner acceptable to the holders of such claims in accordance with the terms of the DIP Termination Agreement; (2) to the extent any DIP Contingent Liabilities arise on or after the Effective Date, such obligations shall, pursuant to section 364(c)(1) of the Bankruptcy Code, and notwithstanding anything in this Plan to the contrary, constitute Allowed superpriority claims and be payable from and have recourse to all unencumbered assets (and proceeds thereof) transferred to the Qimonda Liquidating Trusts; and (3) to the extent that this Plan, as confirmed, constitutes an "Acceptable Plan" under and as defined in the DIP Termination Agreement, within three (3) business days of notice of the Effective Date, the DIP Agent shall return to the Qimonda Liquidating Trusts any remaining cash collateral or expense deposits held by the DIP Agent or its designee pursuant to the terms of the DIP Termination Agreement.

### B. Administrative Expense Claims

Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, unless otherwise agreed by the holder of an Administrative Expense Claim and the applicable Debtor or the Liquidating Trustee, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash:  (a) on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter, but in no event later than 30 days after such claim is due); (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter, but in no event later than 30 days after such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Liquidating Trustee, as the case may be; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided, however* that Administrative Expense Claims do not include Claims filed after the Administrative Expense Claims Bar Date.

### C. Professional Fee Claims

Subject to the provisions of sections 328, 330, 331 or 363 of the Bankruptcy Code and according to the priorities established pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, all Persons awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court (a) on or as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Bankruptcy Court order allowing such Claim becomes a Final Order or (b) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtors or the Liquidating Trustee, as the case may be.

### D. Priority Tax Claims

1. All Allowed Priority Tax Claims, secured and unsecured, shall be treated under this Article II.D.

2. On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive Cash on account of such Claim an amount equal to the Allowed amount of such Claim.

3.    Notwithstanding the provisions of Article II.D.2, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment under Article II.D on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim.  Any Claim or demand for any such penalty shall be subject to treatment as a General Unsecured Claim.

**E.    Other Priority Claims**

On or as soon as practicable after the Effective Date, but in no event later than 30 days after the Effective Date, unless otherwise agreed to by the holder an Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, one of the following treatments, in the sole discretion of the Debtors or the Liquidating Trustee, as the case may be:  (a) full payment in Cash of its Allowed Other Priority Claim; or (b) treatment of its Allowed Other Priority Claim in a manner that leaves such Claim Unimpaired.

**F.    Bar Dates for Administrative Expense Claims**

**1.    General Administrative Bar Date Provisions**

Except as otherwise provided in Article II.F.2, requests for payment of Administrative Expense Claims other than:

(a)  DIP Claims,

(b)  Professional Fee Claims,

(c)  Administrative Expense Claims that have been Allowed on or before the Effective Date,

(d)  Administrative Expense Claims for an expense or liability incurred and payable in the ordinary course of business by a Debtor,

(e)  Administrative Expense Claims on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court,

(f)  Administrative Expense Claims held by a current officer, director or employee of the Debtors for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses,

(g)  US Trustee Fees, and

(h)  Postpetition Intercompany Claims

for the period from the Petition Date to the Effective Date must be filed with the Debtors' claims agent, Epiq Bankruptcy Solutions LLC (Qimonda Richmond, LLC Claims Processing Center, c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5112, New York, NY 10150-5112) and served on the Liquidating Trustee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court no later than 60 days after the Effective Date. Any holder of an Administrative Expense Claim for the period from the Petition Date to the Effective Date that is required to, but does not, file and serve a request for payment of such Administrative Expense Claim in accordance with this Article II.F.1 will be forever barred from asserting such Administrative Expense Claim against the Debtors or their respective property or the Qimonda Liquidating Trusts or any assets of the Debtors' Estates, and such Administrative Expense Claims will be deemed waived and released as of the Effective Date. Objections to any Administrative Expense Claim must be filed by the Liquidating Trustee, and served on the requesting party by the later of: (a) 180 days after the Effective Date; and (b) 120 days after the filing of the request for payment of such Administrative Expense Claim.  All US Trustee Fees shall be paid by the Debtors through the Effective Date and by the Qimonda Liquidating Trusts, in the ordinary course of business.

## 2. Bar Date for Professional Fee Claims

Professionals or other entities asserting a Professional Fee Claim for services rendered solely with respect to a Debtor before the Effective Date must file and serve on the Liquidating Trustee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other applicable order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than sixty (60) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Liquidating Trustee and the requesting party by the later of (a) ninety (90) days after the Effective Date or (b) thirty (30) days after the filing of the applicable request for payment of the Professional Fee Claim. To the extent necessary, the Confirmation Order will amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Professional Fee Claims.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. Summary

The following table classifies Claims and Equity Interests for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Summary of Classification and Treatment of Classified Claims and Equity Interests | | | |
|---|---|---|---|
| **Class** | **Claim** | **Status** | **Voting Rights** |
| N/A | DIP Claims | Unimpaired | Not Entitled to Vote |
| N/A | Administrative Expense Claims | Unimpaired | Not Entitled to Vote |
| N/A | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| N/A | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| N/A | Other Priority Claims | Unimpaired | Not Entitled to Vote |
| 1A-1B | Secured Claims | Unimpaired | Deemed to Accept |
| 2A-2B | General Unsecured Claims | Impaired | Entitled to Vote |
| 3A-3B | Intercompany Claims | Impaired | Entitled to Vote |
| 4A-4B | Equity Interests | Impaired | Deemed to Reject |

### B. Classification and Treatment of Claims and Equity Interests

#### 1. Classes 1A and 1B—Secured Claims

(a) *Classification*: Class 1A consists of Secured Claims against QR and Class 1B consists of Secured Claims against QNA.

(b) *Treatment*: Each holder of an Allowed Secured Claim will be placed in a separate subclass, and each subclass will be treated as a separate Class for distribution purposes. On or as soon as practicable after the Effective Date, but in no event later than 30 days after the Effective Date, each holder of an Allowed Secured Claim shall receive, in full and final satisfaction of such Claim, in the sole discretion of the Debtors, except to the extent any holder of an Allowed Secured Claim agrees to a different treatment, either:

(i) the collateral securing such Allowed Secured Claim;

(ii)  Cash in an amount equal to the value of the collateral securing such Allowed Secured Claim; or

(iii) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered Unimpaired.

(c)  *Voting*: Classes 1A and 1B are Unimpaired, and holders of Secured Claims are conclusively deemed to have accepted the Plan.  All Secured Claims shall be subject to Allowance under the provisions of the Plan, including, but not limited to, Article VI.

## 2.  Classes 2A and 2B—General Unsecured Claims

(a)  *Classification*: Class 2A consists of General Unsecured Claims against QR and Class 2B consists of General Unsecured Claims against QNA.

(b)  *Treatment*:  Each holder of a General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of QR Unsecured Creditor Liquidating Trust Shares or QNA Unsecured Creditor Liquidating Trust Shares, as applicable.

(c)  *Voting*: Classes 2A and 2B are Impaired, and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

## 3.  Classes 3A and 3B—Intercompany Claims

(a)  *Classification*: Class 3A consists of Intercompany Claims owed by QR to QNA and Class 3B consists of Intercompany Claims owed by QNA to QR.

(b)  *Treatment*:  ~~Each holder of an Intercompany Claim~~ QNA shall receive, in full and final satisfaction of ~~such~~ its Allowed Intercompany Claim against QR of $28,404,951, its Pro Rata share of the QR Unsecured Creditor Liquidating Trust Share ~~or QNA Unsecured Creditor Liquidating Trust Share, as applicable~~.  QR will have no Allowed Intercompany Claim against QNA.  Upon entry of the Confirmation Order, the QNA Intercompany ~~Claims~~ Claim against QR shall be deemed to be Allowed.

(c)  *Voting*: Classes 3A and 3B are Impaired~~, and holders~~.  Holders of Intercompany Claims~~,~~, as proponents of the Plan, are ~~entitled~~ deemed to vote to accept ~~or reject~~ the Plan.

## 4.  Classes 4A and 4B—Equity Interests

(a)  *Classification*:  Class 4A consists of Equity Interests in QR and Class 4B consists of Equity Interests in QNA.

(b)  *Treatment*:  Holders of Equity Interests in QR and QNA shall neither receive nor retain any property under the Plan.

(c)  *Voting*:  Classes 4A and 4B are Impaired, and holders of Equity Interests are conclusively deemed to reject the Plan.

## C.  Non-Consensual Confirmation

Because certain Classes are deemed to have rejected the Plan, the Debtors and the Creditors' Committee will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors and the Creditors' Committee reserve the right to alter, amend, modify, revoke or withdraw the Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### D. Solicitation of the Debtors

Notwithstanding anything to the contrary herein, each Debtor that would otherwise be entitled to vote to accept or reject the Plan as a holder of a Claim against another Debtor shall not be solicited for voting purposes, and such Debtor will be deemed to have voted to accept the Plan.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Corporate Existence

As of the Effective Date, each of the Debtors will cease to exist and the QNA Liquidating Trust Assets and the QR Liquidating Trust Assets will be transferred to and vest in the each of the QNA Liquidating Trust and QR Liquidating Trust, respectively, free and clear of claims, liens and interests. Except as otherwise provided in the Plan or the Liquidating Trust Agreement, the Liquidating Trustee may compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for Liquidating Trust Expenses, professionals' fees, disbursements, expenses or related support services (including fees related to the preparation of applications on account of Professional Fee Claims) without application to the Bankruptcy Court.

### B. Appointment of a Liquidating Trustee and a Liquidating Trust Committee.

1. The Plan Proponents shall file a notice as part of the Plan Supplement designating (a) the Person who has been selected as the Liquidating Trustee and (b) the Persons who have been selected as the members of the Liquidating Trust Committee. The Plan Proponents shall seek approval of the designation of the Liquidating Trustee and the members of the Liquidating Trust Committee at the Confirmation Hearing. If such designations are approved by the Bankruptcy Court, the Persons so designated shall be deemed appointed as Liquidating Trustee and the members of the Liquidating Trust Committee, as applicable, on the Effective Date. The Liquidating Trustee and the members of the Liquidating Trust Committee shall have and perform all of the duties, responsibilities, rights and obligations set forth in this Plan and the Liquidating Trust Agreement. Each member of the Liquidating Trust Committee will be entitled to vote on all matters, except as set forth in the Liquidating Trust Agreement.

2. The Liquidating Trustee shall be entitled to counsel for the Qimonda Liquidating Trusts.

3. The Liquidating Trustee shall serve at the direction of the Liquidating Trust Committee as set forth in the Liquidating Trust Agreement, *provided*, *however*, the Liquidating Trust Committee may not direct the Liquidating Trustee or the members of the Liquidating Trust Committee to act inconsistently with their duties under the Liquidating Trust Agreement and the Plan. The Liquidating Trust Committee may terminate the Liquidating Trustee in accordance with the provisions of the Liquidating Trust Agreement.

### C. The Qimonda Liquidating Trusts

#### 1. Formation of the Qimonda Liquidating Trusts and Transfer of Liquidating Trust Assets

(a) On the Effective Date, the Qimonda Liquidating Trusts shall be established pursuant to the applicable Liquidating Trust Agreement for the purpose of, among other things, (i) investigating, pursuing, litigating and, as applicable, settling, Liquidating Trust Claims, (ii) collecting, receiving, holding, maintaining, administering and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed General Unsecured Claims, including objecting, prosecuting, settling and compromising in any manner approved by the Bankruptcy Court such Disputed General Unsecured Claims, except the Liquidating Trustee may, in its discretion, subject to any relevant provision of the Liquidating Trust Agreement, settle or compromise any Disputed General Unsecured Claim without Bankruptcy Court approval, (iv) resolving all Disputed Secured Claims, Disputed DIP Claims, Disputed Administrative Expense Claims, Disputed Professional Fee Claims, Disputed Priority Tax Claims and Disputed Other Priority Claims, including by objecting, prosecuting, settling, and compromising such Disputed Claims in any manner approved by

the Bankruptcy Court, (v) paying all Liquidating Trust Expenses, (vi) making all Distributions to the holders of Allowed Claims from the Qimonda Liquidating Trusts as provided for in the Plan and the Liquidating Trust Agreement, (vii) closing the Chapter 11 Cases, and (viii) otherwise implementing the Plan and finally administering the Estates, all pursuant to and in accordance with the Plan and the Liquidating Trust Agreement. The Qimonda Liquidating Trusts have no objective to, and shall not engage, in a trade or business and shall conduct their activities consistent with the Plan and the Liquidating Trust Agreement.

(b) On the Effective Date, the Debtors' Estates shall transfer and shall be deemed to have irrevocably transferred to the applicable Qimonda Liquidating Trust, for and on behalf of the Beneficiaries, with no reversionary interest in the Debtors, the Liquidating Trust Assets. In addition, the Debtors shall transfer to the Liquidating Trustee for benefit of the Qimonda Liquidating Trusts, the Debtors' evidentiary privileges, including the attorney/client privilege, as they relate to Liquidating Trust Assets, Claims of Beneficiaries and Disputed Claims, and shall also transfer to the Liquidating Trustee for the benefit of the Qimonda Liquidating Trusts all of its books and records relating to Liquidating Trust Assets, Claims of Beneficiaries and Disputed Claims. Furthermore, the Creditors' Committee's counsel and financial advisor shall provide to the Liquidating Trustee (or such professionals designated by the Liquidating Trustee) documents and other information gathered, and relevant work product developed, during the Chapter 11 Cases in connection with its investigation of potential Liquidating Trust Claims, provided that the provision of any such documents and information shall be without waiver of any evidentiary privileges, including without limitation the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral). The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. For purposes of this Article, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtor maintained by or in the possession of third parties, wherever located.

(c) The Qimonda Liquidating Trusts and the Liquidating Trustee will each be a "representative" of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code, and the Liquidating Trustee will be the trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), and, as such, the Liquidating Trustee succeeds to all of the rights, powers and obligations of a trustee in bankruptcy with respect to collecting, maintaining, administering and liquidating the Liquidating Trust Assets for the ratable benefit of the Beneficiaries. To the extent that any Liquidating Trust Asset cannot be transferred to the Qimonda Liquidating Trusts because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidating Trust Asset shall be deemed to have been retained by the applicable Debtor and the Liquidating Trustee shall have been designated as a representative of the applicable Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to collect, maintain, administer and liquidate such Liquidating Trust Asset on behalf of such Estate.

(d) Privileged communications may be shared among the Liquidating Trustee and the Liquidating Trust Committee without compromising the privileged nature of such communications, in accordance with the "joint interest" doctrine.

(e) As soon as reasonably practicable after the Effective Date, (i) the Liquidating Trustee (in consultation with the Liquidating Trust Committee) shall determine the fair market value of the Liquidating Trust Assets as of the Effective Date, based on its good faith determination, and (ii) the Liquidating Trustee shall establish appropriate means to apprise the Beneficiaries of the grantor trust portion of the Qimonda Liquidating Trusts (as described in Article IV.C.6) of the valuation of such holder's interest in the Qimonda Liquidating Trusts. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Qimonda Liquidating Trusts, the Beneficiaries and the Liquidating Trust Committee) for all federal income tax purposes.

(f) Interests in the Qimonda Liquidating Trusts shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law. Holders of interests in the Qimonda Liquidating Trusts shall have no voting rights with respect to such interests. To the extent applicable, the issuance of interests in the Qimonda Liquidating Trusts shall be exempt from any securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code. The Qimonda Liquidating Trusts shall have a term of five (5) years from the Effective Date. Notwithstanding the foregoing, the Liquidating Trust Committee may extend such

term _provided_ that the Qimonda Liquidating Trusts do not become subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended) and _provided_ _further_ that the Bankruptcy Court approves an extension based upon a finding that an extension is necessary for the Qimonda Liquidating Trusts to resolve all Claims, reduce all Liquidating Trust Assets to Cash and liquidate.

### 2. Funding of the Qimonda Liquidating Trusts

On the Effective Date, the Qimonda Liquidating Trusts shall be funded with the Liquidating Trust Assets and any net recoveries of Avoidance Actions obtained by the Debtors prior to the Effective Date, and thereafter, by the recoveries from Liquidating Trust Claims which may be pursued by the Liquidating Trustee as set forth in the Plan or by such other means as approved by the Liquidating Trust Committee, acting through a majority thereof.

### 3. Rights and Powers of the Qimonda Liquidating Trusts and the Liquidating Trustee

The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code, and the right to seek testimony and the production of documents pursuant to of the Bankruptcy Rules, including the right to undertake the following actions and any other actions permitted under the Liquidating Trust Agreement: (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) investigate, and if appropriate, pursue, commence, prosecute, appeal, settle, abandon or compromise any Liquidating Trust Claims (subject to Article IX.C.1(b) of the Plan); (3) collect, receive, hold, maintain, invest, administer and liquidate the Liquidating Trust Assets; (4) calculate and make Distributions to holders of Allowed Claims and pay Liquidating Trust Expenses pursuant to the Plan and the Liquidating Trust Agreement; (5) establish and administer any Disputed Reserves; (6) object to Disputed Claims and, subject to any limitation set forth in the Plan, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (7) retain, employ and compensate professionals and other agents, _provided_, _however_, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Qimonda Liquidating Trusts as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) for federal income tax purposes; (8) file all federal, state and local tax returns and pay any taxes of the Debtors and the Qimonda Liquidating Trusts required to be filed or paid by applicable law; and (9) otherwise implement the Plan and the Liquidating Trust Agreement and finally administer the Estates, including closing the Chapter 11 Cases and terminating and dissolving the Debtors and ultimately, the Qimonda Liquidating Trusts; all pursuant to the Plan and the Liquidating Trust Agreement.

### 4. Obligation of the Liquidating Trustee to Pay Claims under the Plan

All payments to be made under the Plan, including, without limitation, payments required to be made on the Effective Date to holders of Allowed Secured Claims, Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims or Allowed Other Priority Claims and on any Subsequent Distribution Date thereafter, shall be made by the Liquidating Trustee, except to the extent deemed made by the Debtors for tax purposes pursuant to Article IV.C.6.

### 5. Distribution of Liquidating Trust Assets

Distributions of the QNA Unsecured Creditor Liquidating Trust Share and QR Unsecured Creditor Liquidating Trust Share, as applicable, to holders of Allowed General Unsecured Claims, both as set forth in the Plan and the Liquidating Trust Agreement, shall be made by the Liquidating Trustee when the aggregate proceeds and income available for distribution are sufficient, in the Liquidating Trustee's sole and absolute discretion (after consultation with the Liquidating Trust Committee) to economically distribute monies, except to the extent deemed made by the Debtors for tax purposes pursuant to Article IV.C.6 of the Plan.

**6. Tax Treatment**

(a) Each Qimonda Liquidating Trust is intended to be treated for U.S. federal income tax purposes (i) in part as a grantor trust within the meaning of Treasury Regulations § 301.7701-4(d), and (ii) in part as one or more disputed ownership funds within the meaning of Treasury Regulations § 1.468B-9(b)(1). For U.S. federal income tax purposes, the transfer of the Liquidating Trust Assets (to the extent not distributed to holders of Allowed Claims as of the Effective Date) to the respective Qimonda Liquidating Trust will be treated as a transfer of the Liquidating Trust Assets from the Debtors to the holders of Allowed Claims, subject to any liabilities of the Debtors or the respective Qimonda Liquidating Trust payable from the proceeds of such assets, followed by such holders' transfer of such assets (subject to such liabilities) to the respective Qimonda Liquidating Trust. The holders of Allowed Claims will thereafter be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidating Trust Assets (subject to such liabilities). Such holders of Allowed Claims shall include in their annual taxable incomes, and pay tax to the extent due on, their allocable shares of each item of income, gain, deduction, loss and credit, and all other such items shall be allocated by the Liquidating Trustee to such holders using any reasonable allocation method. Notwithstanding the foregoing, distributions made as of the Effective Date to holders of Allowed Claims are intended to be treated for U.S. federal income tax purposes as distributions directly from the Debtors to the holders of such Allowed Claims, and such holders shall include in their taxable incomes any interest earned on such distributions from the Effective Date to the date on which the actual distribution is made.

(b) The Liquidating Trust Agreement will: (i) require that the Liquidating Trustee file income tax returns for each of the Qimonda Liquidating Trusts as a grantor trust (and file separate returns for the disputed ownership fund(s) pursuant to Treasury Regulations § 1.468B-9(b)(1)); (ii) pay all taxes owed by each Qimonda Liquidating Trust on any net income or gain of the Qimonda Liquidating Trust, including net income or gain of the disputed ownership fund(s), on a current basis from Liquidating Trust Assets; (iii) provide for consistent valuations for all Liquidating Trust Assets by the Liquidating Trustee and holders of Allowed Claims, and require that such valuations be used for all tax reporting purposes; (iv) limit the investment powers of the Liquidating Trustee in accordance with IRS Revenue Procedure 94-45; and (v) require that the Qimonda Liquidating Trusts, in accordance herewith, distribute at least annually all net income and the net proceeds from the sale or other disposition of all Liquidating Trust Assets in excess of amounts reasonably necessary to maintain the value of the remaining Liquidating Trust Assets and pay Liquidating Trust Expenses and Claims, including Disputed Claims.

**7. Fees and Expenses of the Qimonda Liquidating Trusts**

Except as otherwise ordered by the Court, the Liquidating Trust Expenses on or after the Effective Date shall be paid from the Qimonda Liquidating Trusts in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court; *provided* that the members of the Liquidating Trust Committee shall serve without compensation. The Debtors, the Liquidating Trustee, Liquidating Trust Committee and all professionals shall have no personal liability in the event there are insufficient funds to pay Liquidating Trust Expenses.

**D. Directors/Officers/Equity/Debts of the Debtors on the Effective Date.**

1. On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of the Debtors shall be terminated and such directors and officers shall be deemed to have resigned or to have been removed without cause.

2. On the Effective Date, all Equity Interests in the Debtors (including all instruments evidencing such Equity Interests), and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors (other than and expressly excluding the DIP Termination Agreement and the provisions of the DIP Facility and the other "Loan Documents" (as defined in the DIP Facility) that survived the Termination Date (as defined in the DIP Termination Agreement)), shall be deemed canceled and extinguished on the Effective Date (whether surrendered for cancellation or otherwise) without further action under any applicable agreement, law, regulation or rule, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

### E.   Liquidation of the Debtors

Except as otherwise provided in the Plan, upon the transfer pursuant to the Plan of the Liquidating Trust Assets to the Qimonda Liquidating Trusts, the Debtors will be deemed dissolved and their business operations withdrawn for all purposes without any necessity of filing any document, taking any further action or making any payment to any governmental authority in connection therewith.  Notwithstanding the foregoing, as soon as practicable on or after the Effective Date, the Qimonda Liquidating Trusts, on behalf of the Debtors shall: (a) file their certificates of dissolution, together with all other necessary corporate documents, to effect dissolution of the Debtors under the applicable laws of their states of incorporation; and (b) complete and file their final federal, state and local tax returns, and, in the discretion of the Liquidating Trustee, pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of each Debtor or its respective Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws. The filing of certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of each such Debtor and expressly without the need to pay any franchise or similar taxes in order to effectuate such dissolution.  As of the Effective Date, the Qimonda Liquidating Trusts shall assume any outstanding responsibility of the Debtors under the Plan.  All Claims against the Debtors are deemed fully satisfied, waived and released in exchange for the treatment of such Claims under the Plan, and holders of Allowed Claims against any Debtor shall have recourse solely to the applicable Liquidating Trust Assets for the payment or satisfaction of their Allowed Claims in accordance with the terms of the Plan.

### F.   Operations of the Debtors Between the Confirmation Date and the Effective Date

The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through and until the Effective Date.

### G.   Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

### H.   Creditors' Committee

As of the Effective Date, the Creditors' Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases.  The retention and employment of the Retained Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, *provided*, *however*, that the Creditors' Committee shall exist, and its Retained Professionals shall be retained and their fees and expenses paid by the Qimonda Liquidating Trusts after such date with respect to (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, including responding to any objections to such applications, whether formal or informal, and attendance at any hearing with respect to the consideration of the applications; and (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

### I.   Termination of Professionals

On the Effective Date, the engagement of each Retained Professional retained by either of the Debtors or the Creditors' Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; *provided, however*, (a) such Retained Professional shall be entitled to prosecute their respective Professional Fee Claims and represent their respective constituents with respect to applications for payment of such Professional Fee Claims, and (b) nothing herein shall prevent the Liquidating Trustee from retaining any such Retained Professional on or after the Effective Date, which retention shall not require Bankruptcy Court approval.

RLF1 4453588v. 14065835v

**J. Post-Confirmation Reporting**

After the Effective Date, the Liquidating Trustee shall (a) file unaudited reports of its activities and the financial affairs of the Qimonda Liquidating Trusts with the Bankruptcy Court on a quarterly basis, within thirty (30) days after the conclusion of each such quarterly period and (b) comply with the provisions of Section 3(b)(I)(iv) of the DIP Termination Agreement with respect to the monthly certificate described therein, in each case until the earlier of the entry of a final decree closing each of the Chapter 11 Cases, or a Bankruptcy Court order converting or dismissing each of the Chapter 11 Cases. Such filed unaudited quarterly reports (referenced in subclause (a) above) shall contain information regarding the liquidation or other administration of property comprising the Liquidating Trust Assets, the distributions made by the Liquidating Trustee and other matters required to be included in such reports in accordance with the Liquidating Trust Agreement and any applicable Bankruptcy Court and United States Trustee guidelines for such matters. In addition, the Liquidating Trustee of the Qimonda Liquidating Trusts will file tax returns provided in this Article IV of the Plan and in the Liquidating Trust Agreement.

## ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A. Distributions on the Effective Date and Initial Distribution Date**

1. On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors (in consultation with the Creditors' Committee) or the Liquidating Trustee (in consultation with the Liquidating Trust Committee), as applicable, shall make, or shall make adequate reserves for, the distributions required to be made under the Plan to holders of Allowed Secured Claims, Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims and Allowed Other Priority Tax Claims.

2. On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall, after setting aside Cash for the Liquidating Trust Expenses, make the Initial Distribution.

**B. Disputed Reserves**

    **1. Establishment of Disputed Reserves**

(a) On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors (in consultation with the Creditors' Committee) or the Liquidating Trustee (in consultation with the Liquidating Trust Committee), as applicable, shall establish a Disputed Reserve for Disputed Secured Claims, Disputed DIP Claims, Disputed Administrative Expense Claims, Disputed Professional Fee Claims, Disputed Priority Tax Claims and Disputed Other Priority Claims, which reserve shall be administered by the Liquidating Trustee. The Liquidating Trustee shall reserve in Cash or other property, for distribution on account of each Disputed Secured Claim, Disputed DIP Claim, Disputed Administrative Expense Claim, Disputed Professional Fee Claim, Disputed Priority Tax Claim and Disputed Other Priority Claim, the Face Amount with respect to each such Disputed Claim.

(b) On the Initial Distribution Date, and after making all Distributions to Beneficiaries required to be made on such date under the Plan, the Liquidating Trustee shall establish a separate Disputed Reserve for Disputed General Unsecured Claims, which Disputed Reserve shall be administered by the Liquidating Trustee. The Liquidating Trustee shall reserve in Cash or other property, for Distribution on account of each Disputed General Unsecured Claim, the full amount distributable with respect to the asserted amount (or such lesser amount as may be estimated by the Court in accordance with Article VI.D hereof) with respect to each Disputed Claim.

    **2. Maintenance of Disputed Reserves**

To the extent that the property placed in a Disputed Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account. The property in the Disputed Reserves shall be held in trust for the benefit of the holders of Claims ultimately determined to be Allowed. Each Disputed Reserve shall be closed and extinguished by the Qimonda Liquidating Trusts when all Distributions and other dispositions of Cash or other property required to

be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of a Disputed Reserve, all Cash (including any investment yield on the Cash) or other property held in that Disputed Reserve shall revest in and become the property of the Qimonda Liquidating Trusts. All funds or other property that vest or revest in the Qimonda Liquidating Trusts pursuant to this paragraph shall be (a) used to pay and create an adequate reserve for future Liquidating Trust Expenses, and (b) thereafter distributed on a Pro Rata basis to holders of Allowed Claims in accordance with the terms of the Plan.

## C. Subsequent Distributions

Any Distribution that is not made on the Effective Date or the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Qimonda Liquidating Trusts in a Disputed Reserve pursuant to Article V.B and distributed (in full, in the case of Secured Claims, DIP Claims, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims or Other Priority Claims; and up to its ratable proportion with respect to the Claims in Class 2A-B or Class 3A-B) on the first Subsequent Distribution Date after such Claim is Allowed or, with respect to Secured Claims, DIP Claims, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and Other Priority Claims, at such earlier date as determined by the Liquidating Trustee; provided that prior to making any distribution on a Subsequent Distribution Date, the Liquidating Trustee shall adjust the reserve of Cash for Liquidating Trust Expenses (whether upward or downward) in his or her sole discretion. No interest shall accrue or be paid on the unpaid amount of any distribution paid on a Subsequent Distribution Date in accordance with this Article V.C.

## D. Record Date for Distributions

Except as otherwise provided in a Final Order of the Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the date of the entry of the Confirmation Order will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the date of the entry of the Confirmation Order. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the date of the entry of the Confirmation Order. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the date of the entry of the Confirmation Order and upon such other evidence or record of transfer or assignment that are known to the Liquidating Trustee as of the date of the entry of the Confirmation Order.

## E. Delivery of Distributions

### 1. General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Debtors or Liquidating Trustee have been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trustee may, in his or her discretion, but is not obligated to, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee deems appropriate, but no Distribution to any holder shall be made unless and until the Liquidating Trustee has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the Liquidating Trustee shall be returned to, and held in trust by, the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed property upon the expiration of four (4) months from the return of the undeliverable Distribution, as set forth below in Article V.E.3. The Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible.

### 2. Minimum Distributions

Notwithstanding anything herein to the contrary, if a distribution to be made to a holder of an Allowed General Unsecured Claim on the Initial Distribution Date or any subsequent date for such Distributions would be $100 or less, no such Distribution is required to be made to that holder.

### 3. Unclaimed Property

Except with respect to property not distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the expiration of four (4) months from the date the Distribution is made, will be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the Qimonda Liquidating Trusts, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that four (4) month period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Qimonda Liquidating Trusts pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

## F. Surrender of Cancelled Instruments and Securities

### 1. Generally

Except as set forth in Article V.G hereof, as a condition precedent to receiving any Distribution hereunder on account of an Allowed Claim evidenced by instruments, securities or other documentation cancelled pursuant to Article IV.D.2 hereof, the holder of such Claim shall tender such instrument, security or other documentation evidencing such Claim to the Qimonda Liquidating Trusts (except as set forth in Article V.G hereof). Any Distributions pursuant to the Plan on account of any Claim evidenced by such instruments, securities or other documentation shall, pending such surrender, be treated as an undeliverable Distribution in accordance with Article V.E hereof; *provided*, *however*, all notes, instruments and other securities issued under the DIP Facility shall be deemed terminated and cancelled upon the Effective Date to the extent not already surrendered and cancelled.

### 2. Failure to Surrender Cancelled Instruments

If any holder of an Allowed Claim evidenced by instruments, securities or other documentation cancelled pursuant to Article IV.D.2 hereof, fails to surrender such instrument, security or other documentation or comply with the provisions of Article V.F.1 hereof within one year after the Effective Date, its Claim for a Distribution under the Plan on account of such instrument, security, or other documentation shall be discharged, and such holder shall be forever barred from asserting such Claim against the Qimonda Liquidating Trusts or its property. In such case, any property held on account of such Claim shall be disposed of pursuant to the provisions set forth in Article V.E.3 hereof.

## G. Lost, Stolen, Mutilated or Destroyed Instrument or Security

Any holder of an Allowed Claim evidenced by instruments, securities or other documentation cancelled pursuant to Article IV.D.2 hereof that has been lost, stolen, mutilated or destroyed, shall, in lieu of surrendering such instrument, security or other documentation deliver to the Qimonda Liquidating Trusts (i) an affidavit of loss reasonably satisfactory to the Liquidating Trustee setting forth the unavailability of such instrument, security, or other documentation and (ii) such additional security or indemnity as may reasonably be requested by the Liquidating Trustee to hold the Qimonda Liquidating Trusts harmless from any damages, liabilities, or costs incurred in treating such Entity as a holder of an Allowed Claim.

**H.  Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement**

Cash payments made pursuant to the Plan or the Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Qimonda Liquidating Trusts or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

**I.  Time Bar to Cash Payments by Check**

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article V.I shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the four (4) month anniversary of the date on which the Distribution was made.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Qimonda Liquidating Trusts as unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Article V.E.3.

**J.  Limitations on Funding of Disputed Reserves**

Except as expressly set forth in the Plan, neither the Debtors, the Creditors' Committee, the Qimonda Liquidating Trusts nor the Liquidating Trustee shall have any duty to fund the Disputed Reserves.

**K.  Withholding and Reporting Requirements**

(a)  In connection with the Plan, to the extent applicable, the Liquidating Trustee in its capacity as a disbursing agent under the Plan or any third party disbursing agent acting at the direction of the Liquidating Trustee (each a "Disbursing Agent") will comply with all applicable tax withholding and reporting requirements imposed on it on the Qimonda Liquidating Trusts by any governmental unit, and all Distributions pursuant to the Plan will be subject to applicable tax withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, each Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with such tax withholding and reporting requirements, including, without limitation, liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Disbursing Agent believes are reasonable and appropriate, including requiring Claim holders to submit appropriate tax and withholding certifications.  To the extent any Claim holder fails to submit appropriate tax and withholding certifications as required by the Disbursing Agent, such Claim holder's Distribution may, in the Disbursing Agent's reasonable discretion, be deemed undeliverable and subject to Article V.E.1.

(b)  Notwithstanding any other provision of the Plan, each Entity receiving (or deemed to receive) a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of the Distribution, including income, withholding and other tax obligations.

(c)  The Debtors and the Disbursing Agent reserve the right to allocate and distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

**L.  No Payments of Fractional Dollars**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

## M.  Interest on Claims

Except as specifically provided for in the Plan or the Confirmation Order or required by applicable law, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Court, no Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

## N.  Setoff and Recoupment

The Liquidating Trustee may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates or the Liquidating Trustee may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates or the Liquidating Trustee of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## O.  Insurance Preservation and Proceeds

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover claims against the Debtors or any other Person.  Holders of Claims which are eligible to be satisfied, in whole or in part, through any such policy shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery or assist the Debtors in seeking recovery under such policies with regard to such Claims.

## P.  Application of Distributions

To the extent applicable, all Distributions to a holder of an Allowed Claim shall apply first to the principal amount of such Claim until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such Distributions, if any, shall apply to any interest accrued on such Claim after the Petition Date (but only to the extent otherwise provided under the Plan).

## ARTICLE VI.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

## A.  No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, the Qimonda Liquidating Trusts shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

## B.  Resolution of Disputed Claims

Notwithstanding any other provision of the Plan, the Qimonda Liquidating Trusts shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

## C.  Objection Deadline

All objections to Disputed Claims shall be filed and served upon the holders of each such Claim by the Claims Objection Deadline, unless otherwise ordered by the Court after notice and a hearing.

**D.   Estimation of Claims**

At any time, (a) prior to the Effective Date, the Debtors, and (b) subsequent to the Effective Date, the Liquidating Trustee may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Qimonda Liquidating Trusts have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Qimonda Liquidating Trusts, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.   All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.   Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

**E.   Disallowance of Claims**

Except as otherwise agreed, or ordered by the Bankruptcy Court, any and all proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.   Rejection of Executory Contracts and Unexpired Leases**

The Plan shall constitute a motion to reject all executory contracts and unexpired leases not previously rejected pursuant to an order of the Bankruptcy Court unless otherwise set forth in the Plan Supplement, and the Debtors shall have no further liability thereunder.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

**B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Debtors and the Creditors' Committee no later than thirty (30) days after the entry of the Confirmation Order by the Bankruptcy Court.  Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.E.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

RLF1 4453588v. 14065835v

**ARTICLE VIII.**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A. Conditions Precedent to the Effective Date**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1. The Confirmation Order has become a Final Order.

2. The Confirmation Order shall be in full force and effect.

3. The Liquidating Trust Agreement shall have been executed.

4. The Liquidating Trustee shall have been appointed and shall have accepted such appointment.

5. The members of the Liquidating Trust Committee shall have been appointed and shall have accepted such appointment.

Notwithstanding the foregoing, the Debtors and the Creditors' Committee reserve the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent. Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**ARTICLE IX.**

**RELEASE, EXCULPATION, INJUNCTION AND RELATED PROVISIONS**

~~**A. Releases**~~

**A. Release by Debtor Exculpated Parties of DIP Released Parties**

~~As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, any other Debtor Exculpated Party and any Person seeking to exercise the rights of the Estates, in each case, whether individually or collectively, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge the DIP Released Parties of all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, Causes of Action, and liabilities which the Debtors, any other Debtor Exculpated Party or the Estates are entitled to assert, including, without limitation, any derivative Claims asserted on behalf of the Debtors, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases or the Plan (other than the rights under the Plan and the contracts, releases, and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained herein is intended to operate as a release of any potential claims based upon gross negligence or willful misconduct.~~

**2. Release by Non-Debtor Committee Exculpated Parties of DIP Released Parties.**

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Committee Exculpated Parties shall be deemed to forever release, waive, and discharge the DIP Released Parties of all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, Causes of Action, and liabilities which the Committee Exculpated Parties are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases or the Plan (other than the rights under the Plan and the contracts, releases, and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained herein is intended to operate as a release of any potential claims based upon gross negligence or willful misconduct.*

**3. Release by DIP Released Parties of Exculpated Parties**

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the DIP Released Parties shall be deemed to forever release, waive, and discharge the Exculpated Parties of all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, Causes of Action, and liabilities which the DIP Released Parties are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the DIP Facility, the DIP Termination Agreement, the Chapter 11 Cases or the Plan (other than the rights under the Plan and the contracts, releases, and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained herein is intended to operate as a release of any potential claims based upon gross negligence or willful misconduct.*

*AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTORS, ANY OTHER DEBTOR EXCULPATED PARTY AND ANY PERSON SEEKING TO EXERCISE THE RIGHTS OF THE ESTATES, IN EACH CASE, WHETHER INDIVIDUALLY OR COLLECTIVELY, INCLUDING, WITHOUT LIMITATION, ANY SUCCESSOR TO THE DEBTORS OR ANY ESTATE REPRESENTATIVE APPOINTED OR SELECTED PURSUANT TO SECTION 1123(B)(3) OF THE BANKRUPTCY CODE, SHALL BE DEEMED TO FOREVER RELEASE, WAIVE, AND DISCHARGE THE DIP RELEASED PARTIES OF ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, REMEDIES, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES WHICH THE DEBTORS, ANY OTHER DEBTOR EXCULPATED PARTY OR THE ESTATES ARE ENTITLED TO ASSERT, INCLUDING, WITHOUT LIMITATION, ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE ESTATES, THE CONDUCT OF THE DEBTORS' BUSINESSES, THE CHAPTER 11 CASES OR THE PLAN (OTHER THAN THE RIGHTS UNDER THE PLAN AND THE CONTRACTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED OR TO BE DELIVERED HEREUNDER); PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN IS INTENDED TO OPERATE AS A RELEASE OF ANY POTENTIAL CLAIMS BASED UPON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.*

**B. Exculpation**

*Subject to* Article IX.G *of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Entity for any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising from and after the Petition Date related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert (whether individually or*

*collectively) or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or the Estates and further including those in any way related to the Liquidating Trust Agreement, Chapter 11 Cases, or the Plan, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, DIP Facility, the Liquidating Trust Agreement or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Debtors; provided, however, foregoing provisions of this Article IX.B shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, however, that each Exculpated Party be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents.*

*SUBJECT TO Article IX.G OF THE PLAN, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY AND ALL CLAIMS, CAUSES OF ACTION AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES TAKING PLACE OR ARISING FROM AND AFTER THE PETITION DATE RELATED IN ANY WAY TO THE DEBTORS, INCLUDING, WITHOUT LIMITATION, THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF ANY OF THE DEBTORS OR THE ESTATES AND FURTHER INCLUDING THOSE IN ANY WAY RELATED TO THE LIQUIDATING TRUST AGREEMENT, CHAPTER 11 CASES, OR THE PLAN, INCLUDING ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR CONSUMMATING THE PLAN, THE DISCLOSURE STATEMENT, DIP FACILITY, THE LIQUIDATING TRUST AGREEMENT OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH THE DEBTORS; PROVIDED, HOWEVER, FOREGOING PROVISIONS OF THIS Article IX.B SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; PROVIDED, FURTHER, HOWEVER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS.*

## C. Preservation of Causes of Action

### 1. Vesting of Causes of Action

(a) Except as otherwise provided in the Plan or the Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code any and all Liquidating Trust Claims that the Debtors' Estates may hold against any Person, together with proceeds of the foregoing, if any, are reserved for, assigned to, and shall become property of the Qimonda Liquidating Trusts, respectively on the Effective Date.

(b) Except as otherwise provided in the Plan, Confirmation Order or the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Liquidating Trust Claims, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

## 2. Preservation of All Causes of Action Not Expressly Settled or Released

(a)  Unless a Cause of Action against any Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Cause of Action, including all Liquidating Trust Claims to be transferred by the Debtors to the Qimonda Liquidating Trusts pursuant to the Plan, which include without limitation the Avoidance Actions, the Kingston Lien Avoidance Action, the IRB Avoidance Action, the QNA-Kingston Adversary Proceeding, the Other A/R Recovery Actions, any claims related to the 200mm Leveraged Lease Transaction and the 300mm Leveraged Lease Transaction, and potential claims and causes of actions against directors and officers related to breaches of duty related to, among other things, the granting of liens against the estates, for possible adjudication by the Liquidating Trustee, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action have been released in the Plan (including as a result of Article IX.A) or any other Final Order (including the Confirmation Order).  In addition, the Qimonda Liquidating Trusts reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)  Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Qimonda Liquidating Trusts subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether:  (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or the Qimonda Liquidating Trusts have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or the Qimonda Liquidating Trusts have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors or the Qimonda Liquidating Trusts as disputed, contingent, or unliquidated.

## D.  Releases of Liens

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest, except as set forth in the following proviso, shall revert to the Debtors and the Qimonda Liquidating Trusts; provided, however, and notwithstanding the foregoing, (a) the liens of the DIP Agent, for the benefit of itself and the DIP Lenders, on any remaining cash collateral or expense deposits held pursuant to the DIP Termination Agreement or otherwise shall be deemed released or extinguished on the Effective Date if and to the extent that this Plan, as confirmed, constitutes an "Acceptable Plan" as defined in the DIP Termination Agreement, and (b) no interest or right of the DIP Agent or the DIP Lenders under the DIP Termination Agreement or the provisions of the DIP Facility or the other "Loan Documents" (as defined in the DIP Facility) that survived the Termination Date (as defined in the DIP Termination Agreement) other than the liens which are released in accordance with the terms of subclause (a) above, shall be deemed released, terminated or otherwise extinguished by the provisions of Article IX.D of the Plan.

## E.  Injunction

1.  From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Creditors' Committee, the Qimonda Liquidating Trusts or the Liquidating Trustee, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

2.  Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the

Creditors' Committee, the Qimonda Liquidating Trusts, the Liquidating Trustee, their successors and assigns, and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

3.   The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their assets or properties. On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

4.   Except as otherwise expressly provided for in the Plan or with respect to obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from:

(a)   commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Qimonda Liquidating Trusts or the Liquidating Trustee, their successors and assigns, and their assets and properties;

(b)   enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Qimonda Liquidating Trusts or the Liquidating Trustee, their successors and assigns, and their assets and properties;

(c)   creating, perfecting, or enforcing any encumbrance of any kind against any Debtor, the Qimonda Liquidating Trusts or the Liquidating Trustee or the property or estate of any Debtor or the Qimonda Liquidating Trusts;

(d)   asserting any right of subrogation against any Debtor, the Qimonda Liquidating Trusts or the Liquidating Trustee or against the property or estate of any the Debtors or the Qimonda Liquidating Trusts, except to the extent a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or

(e)   commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

5.   Notwithstanding any provision in the Plan or the Confirmation Order to the contrary, nothing contained in the Plan or the Confirmation Order shall extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any creditor or vendor which is asserted in a timely filed proof of claim or timely filed objection to the Plan or (b) that is or may be asserted as an affirmative defense or other defense to a Cause of Action or claim asserted by a Debtor or the Qimonda Liquidating Trusts against such creditor or vendor.

1.   FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE DEBTORS, THE CREDITORS' COMMITTEE, THE QIMONDA LIQUIDATING TRUSTS OR THE LIQUIDATING TRUSTEE, THEIR SUCCESSORS AND ASSIGNS, AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

2.   EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE ESTATES, THE CREDITORS' COMMITTEE, THE QIMONDA LIQUIDATING TRUSTS, THE LIQUIDATING TRUSTEE, THEIR SUCCESSORS AND ASSIGNS, AND THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.

3.    THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS IN THE PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS SHALL BE SATISFIED AND RELEASED IN FULL.

4.    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR WITH RESPECT TO OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PARTIES AND ENTITIES ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, ON ACCOUNT OF ANY CLAIM OR EQUITY INTEREST SATISFIED AND RELEASED HEREBY, FROM:

(a)  COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY DEBTOR, THE QIMONDA LIQUIDATING TRUSTS OR THE LIQUIDATING TRUSTEE, THEIR SUCCESSORS AND ASSIGNS, AND THEIR ASSETS AND PROPERTIES;

(b)  ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY DEBTOR, THE QIMONDA LIQUIDATING TRUSTS OR THE LIQUIDATING TRUSTEE, THEIR SUCCESSORS AND ASSIGNS, AND THEIR ASSETS AND PROPERTIES;

(c)  CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST ANY DEBTOR, THE QIMONDA LIQUIDATING TRUSTS OR THE LIQUIDATING TRUSTEE OR THE PROPERTY OR ESTATE OF ANY DEBTOR OR THE QIMONDA LIQUIDATING TRUSTS;

(d)  ASSERTING ANY RIGHT OF SUBROGATION AGAINST ANY DEBTOR, THE QIMONDA LIQUIDATING TRUSTS OR THE LIQUIDATING TRUSTEE OR AGAINST THE PROPERTY OR ESTATE OF ANY THE DEBTORS OR THE QIMONDA LIQUIDATING TRUSTS, EXCEPT TO THE EXTENT A PERMISSIBLE RIGHT OF SUBROGATION IS ASSERTED WITH RESPECT TO A TIMELY FILED PROOF OF CLAIM; OR

(e)  COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND IN RESPECT OF ANY CLAIM OR EQUITY INTEREST OR CAUSE OF ACTION RELEASED OR SETTLED HEREUNDER.

5.    NOTWITHSTANDING ANY PROVISION IN THE PLAN OR THE CONFIRMATION ORDER TO THE CONTRARY, NOTHING CONTAINED IN THE PLAN OR THE CONFIRMATION ORDER SHALL EXTINGUISH, IMPACT, OR RELEASE ANY RIGHT OF SETOFF, RECOUPMENT, OR SUBROGATION OF ANY KIND (A) HELD BY ANY CREDITOR OR VENDOR WHICH IS ASSERTED IN A TIMELY FILED PROOF OF CLAIM OR TIMELY FILED OBJECTION TO THE PLAN OR (B) THAT IS OR MAY BE ASSERTED AS AN AFFIRMATIVE DEFENSE OR OTHER DEFENSE TO A CAUSE OF ACTION OR CLAIM ASSERTED BY A DEBTOR OR THE QIMONDA LIQUIDATING TRUSTS AGAINST SUCH CREDITOR OR VENDOR.

## F.  Termination of All Employee and Workers' Compensation Benefits

Except as otherwise provided in the Liquidating Trust Agreement, all existing employee benefit plans and workers' compensation benefits not previously expired or terminated by the Debtors will be terminated on or before the Effective Date.

## G.  Exclusions and Limitations on ~~Releases and~~ Exculpation

Notwithstanding anything in the Plan to the contrary, no provision of the Plan or the Confirmation Order, including, without limitation, the exculpation provision contained in Article IX.B of the Plan (other than and

expressly excluding the releases set forth hereinabove in Article IX.A of the Plan, which releases shall be unaffected by the provisions of Article IX.G of the Plan), shall (a) modify, release or otherwise limit the liability of any Person who is, or becomes, the subject of a Liquidating Trust Claim (to the extent, and only to the extent, related to such Liquidating Trust Claim), or (b) modify, release or otherwise limit the liability of any Person not specifically released or exculpated hereunder, including, without limitation, any Person ~~that is a co-obligor or joint tortfeasor of a DIP Released Party or~~ that is otherwise liable under theories of vicarious or other derivative liability or that is a non-Debtor third party guarantor of any obligation of the Debtors.

## ARTICLE X.

## RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.A;

4. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Qimonda Liquidating Trusts after the Effective Date, including any Liquidating Trust Claims;

6. to hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Qimonda Liquidating Trusts or the Liquidating Trust Agreement or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Confirmation Order relating to the subject matter of the Liquidating Trust Claims;

7. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of the Plan, the Confirmation Order, the Liquidating Trust Agreement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

8. resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9. resolve and determine any DIP Claims or any other future indemnification claims of the DIP Lenders and the DIP Agent, if any;

10. issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

11. enforce all of the provisions of A and Article IX.A~~IX.A~~;

12. enforce the Injunction set forth in Article IX.E;

13. enforce all orders previously entered by the Bankruptcy Court;

14. resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

15. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

16. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

17. enter an order and/or the decree contemplated in Fed. R. Bankr. P. 3022 concluding the Chapter 11 Cases.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains exclusive jurisdiction to the fullest extent permitted by applicable law to adjudicate Liquidating Trust Claims and to hear and determine disputes concerning Liquidating Trust Claims and any motions to compromise or settle such Liquidating Trust Claims or disputes relating thereto. Despite the foregoing, if the Liquidating Trustee on behalf of the Qimonda Liquidating Trusts chooses to pursue any Liquidating Trust Claim in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

### A. Modification of Plan

Subject to the limitations contained in the Plan: (1) the Debtors and the Creditors' Committee reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors (in consultation with the Creditors' Committee) or the Qimonda Liquidating Trusts, as the case may be, and upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code.

### B. Revocation of Plan

The Debtors and the Creditors' Committee reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of liquidation. If the Debtors and the Creditors' Committee revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors, the Creditors' Committee or any other Entity; or (c) constitute an admission of any sort by the Debtors, the Creditors' Committee or any other Entity.

**C. Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**D. Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to the principles of conflict of laws thereof.

**E. Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**F. Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The Liquidating Trustee or its valid designee in accordance with the Liquidating Trust Agreement shall be authorized to (1) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (2) certify or attest to any of the foregoing actions. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, filing fee, sales or use tax or similar tax: (1) any dissolution or liquidation transaction; (2) the execution and implementation of the Liquidating Trust Agreement, including the creation of the Qimonda Liquidating Trusts, any transfers of the Liquidating Trust Assets or other assets (if any) to, by or from the Qimonda Liquidating Trusts, including the sale, liquidation, transfer, foreclosure, abandonment or other disposition of the Liquidating Trust Assets; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any agreements of liquidation or dissolution, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan. The Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**G. Section 1125(e) Good Faith Compliance**

The Debtors and the Creditors' Committee, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**H. Further Assurances**

The Debtors, the Qimonda Liquidating Trusts, all holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**I. Service of Documents**

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors and the Creditors' Committee shall be sent by first class U.S. mail, postage prepaid to:

Qimonda North America Corp.
Qimonda Richmond, LLC
P.O. Box 52485
Durham, NC 27717
Attn: Scott T. Ryan, Esq.

*with a copy to*:

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.

*with a copy to*:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Attn: Mark Thompson, Esq. and Morris J. Massel, Esq.

-and-

Official Committee for the Unsecured Creditors for Qimonda
c/o Jones Day
2727 N. Harwood Street
Dallas, Texas 75201
Attn: Craig F. Simon, Esq. and Daniel P. Winikka, Esq.

*with a copy to*:

Jones Day
2727 N. Harwood Street
Dallas, Texas 75201
Attn: Craig F. Simon, Esq. and Daniel P. Winikka, Esq.

*with a copy to*:

Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Attn: William P. Bowden, Esq. and Amanda M. Winfree, Esq.

## J. Filing of Additional Documents

On or before the Effective Date, the Debtors and the Creditors' Committee may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Dated:   June 7, 2011
        Wilmington, Delaware

                                QIMONDA NORTH AMERICA CORP.


                                By:  _____/s/ Scott T. Ryan_____
                                Name:   Scott T. Ryan
                                Title:   Vice President, General Counsel and Secretary



                                QIMONDA RICHMOND, LLC


                                By:  _____/s/ Scott T. Ryan_____
                                Name:   Scott T. Ryan
                                Title:   Vice President, General Counsel and Secretary


                                OFFICIAL COMMITTEE OF UNSECURED CREDITORS

                                By:  _____/s/ ~~Mark~~ Craig Dobbins_____
                                Name: ~~Mark~~ ____Craig Dobbins


                                ~~Title:     Senior Vice President~~

RLF1 4453588v. ~~14065835v~~